IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

IN AND FOR NEW CASTLE COUNTY

| | | |
|---|---|---|
| STATE OF DELAWARE, | ) | |
| | ) | |
| v. | ) | I.D. 1503006100 |
| | ) | |
| JAI ALBERT, | ) | |
| | ) | |
| Defendant. | ) | |

Submitted:  November 6, 2015
Decided:  December 3, 2015

*Upon Consideration of Defendant's
Motion to Suppress.*
**DENIED.**

John S. Taylor, Esquire, Deputy Attorney General.  Attorney for the State of Delaware.

Joseph W. Benson, Esquire.  Attorney for Defendant.

**BUTLER, J.**

At issue here is whether a certain search warrant obtained by the police in March, 2015 contained probable cause. The Court finds that it did and denies the instant motion.

Most of the facts spelled out in the search warrant in question detail the drug related activity of Richard Wilson and are not contested by defendant Jai Albert. It appears from the affidavit of probable cause that the police became interested in Wilson and Albert in July, 2014 when a Confidential Informant ("CI") gave the police their names. The CI said they were involved in heroin sales out of a black Acura in the 1300 block of E. 29th Street in the City. This was followed by surveillance corroborating the black Acura and Albert engaging in what appeared to be drug dealing from the automobile in the 1300 block of E. 29th Street.

Roughly 6 months later, in January 2015, police conducted further surveillance, this time using a stationary camera placed in the 1300 block of E. 29th Street. Both Albert and Wilson were seen engaging in what appeared to be drug deals. In addition, a civilian witness – a neighbor – told them Albert keeps the drugs in the center console of the black Acura. There followed a "controlled buy" of drugs from Wilson to a CI from the Acura and more surveillance of the Acura.

Then on February 11, 2015, Albert arrives at Wilson's residence driving a Denali. His arrival is associated with a significant uptick in apparent drug dealing. The following week, Wilson is observed entering Albert's Denali, retrieving a

1

large blue bag and transporting it to an abandoned vehicle that was apparently used to store a stash of drugs while they were being sold on the street.

Thus far, the affidavit clearly makes a connection between Albert and Wilson and drug dealing in either the 2700 block of Thatcher Street or the nearby 1300 block of E. 29th Street. But thus far, there is bare mention of the searched premises in dispute here: #12 Lea Boulevard. But on February 28, 2015, Wilson and Albert are observed meeting at that location, which is a recording studio leased by Defendant Albert. Wilson is observed entering the building with a large trash bag, half full and weighed down with "something heavy." Upon departing, however, he is apparently empty handed, but by the time he reaches his home, he exits the vehicle with a "blue colored book bag" and makes a quick stop at the abandoned vehicle.

Surveillance at #12 Lea Boulevard the next day, however, showed Albert leaving the business with a large duffel bag, pointedly, large enough to contain the contents of the bag that Wilson was observed depositing at the business the day before.

Finally, the affidavit describes a final "controlled buy" from Defendant Wilson, but #12 Lea Boulevard is not further implicated. Warrants for four locations were authorized on March 6, 2015 and evidence incriminating Defendant were located at #12 Lea Boulevard. In addition, police

2

found 2 cell phones at Defendant's residence when he was arrested that day. Two sets of additional warrants were issued related to the cell phones. On March 21, 2015, JP Court warrants were issued authorizing the search of the contents of the two cell phones. Finally, on April 23, 2015, Superior Court warrants were issued directing Sprint Wireless to supply cell tower data from the cell phones.[1]

Defendant now moves to suppress the evidence seized at #12 E. Lea Boulevard and the evidence retrieved from his cell phones, arguing that no nexus existed between any alleged crimes and the searched address and cell phones. As to Lea Boulevard, Defendant contends that apart from merely establishing that Defendant operated a business at the location, the affidavit does not describe any facts that could lead a judicial officer to conclude that there is a reasonable basis to believe that any evidence of Defendant's alleged drug dealing would be found at the building. With respect to the cell phones, Defendant argues that the affidavit contains nothing more than a mere belief that some evidence of criminal activity would be found in the phones, which is insufficient to establish probable cause.

## STANDARD OF REVIEW

The burden of establishing that a search or seizure violated a defendant's rights under the United States Constitution, the Delaware Constitution or the

---

[1] Defendant's motion only cites language from the second set of warrants, making it unclear as to whether he seeks to suppress any evidence obtained from *either* search, or solely evidence obtained as a result of the Sprint Wireless search warrant.

Delaware Code rests on the proponent of a motion to suppress.[2]  The defendant must establish by preponderance of the evidence that the challenged search or seizure was unlawful.[3]

The United States and Delaware Constitutions protect against unreasonable search and seizures by requiring that a search warrant be issued only upon a showing of probable cause.[4]  The Delaware Supreme Court has consistently held that the requirements for the issuance of a search warrant, codified at 11 *Del. C.* §§ 2306 and 2307, set forth a "four- corners" test for probable cause.[5]  Pursuant to that standard, sufficient facts must appear on the face of the affidavit so that an appellate court can verify the existence of probable cause.[6]  Consequently, the affidavit in support of a search warrant must, within its four corners, set forth sufficient facts for a neutral judicial officer to form a reasonable belief that an offense has been committed and that seizable property will be found in a particular place or on a particular person.[7]

---

[2] *Rakas v. Illinois,* 439 U.S. 128, 130 n.1 (1978); *Sisson v. State*, 883 A.2d 868, 875 (Del. Super. Ct. 2005), *aff'd* 903 A.2d 288 (Del. 2006).

[3] *Sisson v. State*, 883 A.2d 868, 875 (Del. 2005).

[4] *See* U.S. Const. amend IV; Del. Const. art. 1, § 6.

[5] *Dorsey v. State*, 761 A.2d 807, 811 (Del. 2000).

[6] *Id.*

[7] *Id.*

A determination of probable cause requires a logical nexus between the items sought and the place to be searched.[8] This nexus may be inferred from the factual allegations of the affidavit, including "the type of crime, the nature of the items sought, and the extent of an opportunity for concealment and normal inferences as to where a criminal would hide [evidence of a crime]."[9] Thus, a judicial officer may find probable cause when, considering the totality of the circumstances, "there is a *fair probability* that contraband or evidence of a crime will be found in a particular place."[10]

We review the judicial officer's probable cause determination "with great deference, considering it as a whole in a practical, commonsense manner, and not on the basis of a hypertechnical analysis of its separate allegations."[11] The reviewing court must "simply ensure that the [judicial officer] had a substantial basis for concluding that probable cause existed."[12] Notwithstanding this

---

[8] *Id.*

[9] *See State v. Ivins*, 2004 WL 1172351, at *4 (Del. Super. Ct. May 21, 2004) (alteration in original); *see also Sisson*, 903 A.2d at 296.

[10] *Sisson*, 903 A.2d at 296 (emphasis added); *Jensen*, 482 A.2d 105, 112 (Del. 1984) ("The test for probable cause is much less rigorous than that governing the admission of evidence at trial and requires only that a probability, not a prima facie showing, of criminal activity be established.").

[11] *Sisson*, 903 A.2d at 296.

[12] *Id.*

deference, a reviewing court must ensure that the determination of probable cause reflects a proper analysis of the totality of the circumstances.[13]

## DISCUSSION

### A.    #12 Lea Boulevard

There is really very little disagreement between the parties: the "facts" are those stated in the affidavit of probable cause and the law is that probable cause must be stated in the affidavit.  The State says there are enough facts stated in the affidavit to support the warrant, the defense says there are not.

On balance, the Court agrees with State that the issuing judicial officer had a substantial basis for finding that there was a fair probability that contraband or evidence of a crime would be found at the Lea Boulevard location.

First, the officers' observations as detailed above establish probable cause to believe that Defendant and Wilson were engaging in the sale of heroin from July 2014 until March 2015 and that Defendant and Wilson were using the Acura and the Denali to transport their heroin supply to various locations for storage and subsequent sale.

Particularly, on February 11, 2015, Wilson exited the Acura with a large, white plastic bag, met Defendant on Thatcher Street, and shortly thereafter, was

---

[13] *State v. Holden*, 60 A.3d 1110, 1114 (Del. 2013); *LeGrande v. State*, 947 A.2d 1103, 1108 (Del. 2008).

6

observed engaging in apparent drug transactions. On February 17, 2015, officers observed Wilson remove a large blue bag from the Denali and deliver it to the trunk of the abandoned vehicle behind 2714 Thatcher Street. Finally, On February 28, 2015, Wilson met Defendant at the Lea Boulevard address. Wilson was carrying a large trash bag, went inside the building, and exited shortly after without the bag. The next day, Albert leaves #12 Lea Boulevard with a large duffel bag, large enough to carry the contents of the bag Wilson had carried in the day before. None of this evidence, taken in pieces, is particularly compelling. But all of it taken together need not satisfy a "beyond a reasonable doubt" standard. We think the State has adequately stated the case that probable cause existed to believe there would be evidence of the defendants' drug dealing conspiracy inside #12 Lea Boulevard.

## B. Cell Phones

The United States Supreme Court recently ruled that police officers must generally secure a search warrant before a cell phone may be searched.[14] Although that general requirement to obtain a search warrant might be new, the substantive requirements for securing a cell phone search warrant are not. We adhere to the same "four corners" test as outlined above; that is, the affidavit must provide on its

---

[14] *Riley v. California*, 134 S. Ct. 2473, 2485 (2014).

face enough information to form a reasonable belief that evidence of Defendant's drug dealing would be found on the cell phones.[15]

In the JP Court affidavits, Detective Chorlton describes Defendant's arrest and the results of a search of #12 Lea Boulevard, Wilson's residence, and the abandoned property at 2714 Thatcher Street, and indicated that Defendant was in possession of the cell phones when he was taken into custody. Detective Chorlton stated, based on his "training, knowledge and experience," that people involved in criminal activity use cell phones to facilitate their crimes and to communicate with co-conspirators, and that drug traffickers use cell phones to conduct illegal activity, thus establishing probable cause that evidence regarding Defendant's drug dealing would be found within the cell phones seized. The affidavits do not give any indication that Defendant was ever observed using a cell phone in connection with selling heroin.[16] The Superior Court affidavits contained many of the same statements, but also indicated that officers believed Wilson would travel to

---

[15] *See Starkey v. State*, 2013 WL 4858988, at *3 (Del. Sept. 10, 2013).

[16] Defendant's motion cites two paragraphs from the Superior Court warrants which, in sum, indicate that Wilson periodically traveled to Philadelphia to purchase heroin, and that Detective Chorlton believed that Wilson would call Defendant during those trips to update Defendant on the status of the delivery. Defendant accurately notes that there is no indication that Detective Chorlton had first-hand knowledge that Wilson actually called Defendant at any time. That fact, however, does not prevent a finding of probable cause. *See United States v. Georgiou*, 2009 WL 4641719, at *10 (E.D. Pa. Dec. 7, 2009) (explaining that probable cause was not defeated by the absence of evidence that the particular devices to be searched were actually used by the defendant in furtherance of his alleged criminal activity).

8

Philadelphia to purchase heroin and would keep Defendant apprised of the delivery via cell phone communications.

Neither party has identified, nor has the Court's independent research revealed, any Delaware case law commenting on the heavy reliance on the "boilerplate" language that predominates the cell phone search warrants. While an officer's training and experience cannot substitute for the lack of an evidentiary nexus,[17] it is less clear the extent to which that training and experience can contribute to establishing an evidentiary nexus. On this question, the Court finds the United States District Court's decision in *United States v. Gholston*[18] informative.

In *Gohlston*, two men, one of whom was identified as the defendant, robbed a gas station.[19] The defendant had a cell phone in his possession at the time of his arrest, which police seized and eventually searched pursuant to a search warrant.[20] The defendant moved to suppress the evidence found on the cell phone, arguing that the affidavit submitted in support of the search warrant was wholly generic.[21]

---

[17] *State v. Ranken*, 25 A.3d 845, 864 (Del. Super. 2010).

[18] 993 F.Supp.2d 704 (E.D. Mich. 2014).

[19] *Id.* at 707.

[20] *Id.* at 707-708.

[21] *Id.* at 717.

In rejecting that argument, the district court explained that general statements of an officer's training and experience, in conjunction with evidence that the defendant participated in a robbery with another individual supported an inference that searching the cell phone would reveal evidence of the identities of the others involved or their possible pre-planning and coordination of criminal activity.[22]

Here, the affidavits stated facts sufficient to support a finding that Defendant and Wilson were involved in illegal heroin distribution, namely, the large amount of heroin found at the locations frequented by the pair. The affiant also stated that based on his training and experience he knew that people involved in illegal activity, drug trafficking in particular, used cell phones to facilitate and coordinate their crimes. These facts, viewed together, are sufficient to support an inference that Defendant used his cell phone to coordinate with Wilson.

As the District Court noted in *Gholston*, "a number of courts have found that an affidavit establishes probable cause to search a cell phone when it describes evidence of criminal activity involving multiple participants and includes the statement of a law enforcement officer, based on his training and experience, that cell phones are likely to contain evidence of communications and coordination

---

[22] *Id*. at 718-719.

among these multiple participants."[23]   Considering the totality of the circumstances, the Court is satisfied that the facts alleged in the affidavits for both the first and second set of cell phones established a minimally sufficient nexus between the criminal activity and Defendant's cell phones.

For the reasons stated, defendant's motions to suppress evidence are denied in their entirety.

**IT IS SO ORDERED.**

**/s/ Charles E. Butler**
Judge Charles E. Butler

---

[23] *Id.* at 720. *See also United States v. Barret*, 824 F.Supp.2d 419, 448 (E.D.N.Y. 2011) (probable cause to search cell phone established where affidavit described investigation evidencing the defendant's involvement in drug distribution and stated affiant's experience that narcotic traffickers use cell phones to communicate and store information); *United States v. Eiland*, 2006 WL 516743, at *12 (D.D.C. Mar. 2, 2006) (upholding cell phone search warrant where the affidavit "contained references to [the defendant's] conduct sufficient to support a finding that he was involved in illegal narcotics trafficking" and where the affiant noted that in his experience, those involved in drug trafficking "frequently used cell phones to facilitate their communications"); *United States v. Wiseman*, 158 F.Supp.2d 1242, 1249 (D. Kan. 2001) (noting that it had "become common knowledge in the courts" that "cellular phones, complete with memory of numbers or frequently called, or their 'address books,' are a known tool of the drug trade").