**STATE of Delaware**

v.

**Sean M. SISSON, Defendant.**

**I.D. No. 0403019957.**

Superior Court of Delaware, New Castle County.

Submitted: Dec. 20, 2004.
Decided: March 11, 2005.

Donald R. Roberts, Deputy Attorney General, Department of Justice, Wilmington, DE, for the State of Delaware.

William J. Rhodunda, Jr., Oberly, Jennings & Rhodunda, P.A., Wilmington, DE, for Defendant.

## MEMORANDUM OPINION

SLIGHTS, J.

### I.

Defendant, Sean M. Sisson, was arrested on March 24, 2004, and subsequently indicted by the Grand Jury on ten counts of Sexual Exploitation of a Child, twenty-five counts of Unlawfully Dealing in Child Pornography, and twenty-five counts of Possession of Child Pornography. Pending before the Court is a motion to suppress evidence that has drawn the Court into the enigmatic world of "cyberspace." The criminal charges in this case arise, in part, from allegations that Mr. Sisson was transmitting child pornography over the Internet. Law enforcement became aware of the activity after an Internet service provider intercepted an email that included an attachment containing child pornography. Based on account information linked to the Internet "screen name" that purportedly sent the email, the Internet service provider determined the identity of the subscriber to be Mr. Sisson, and turned his account information over to the police along with the image of child pornography. The police then used this information to form the basis of an application for a search warrant for Mr. Sisson's residence, including any electronic devices that may contain child pornography. A search of Mr. Sisson's computer revealed several

hundred images of prepubescent children engaged in sex acts with adult males.

Mr. Sisson has moved to suppress all evidence seized from his residence on the ground that the evidence was seized in violation of the Fourth Amendment of the United States Constitution, Article I, § 6 of the Delaware Constitution, and Delaware statutory law. Mr. Sisson contends that the warrant issued by the Magistrate was not supported by probable cause to link him or his residence to the offensive email. Specifically, he argues that a screen name alone is not sufficient to link a particular individual to information transmitted over the Internet. Additionally, he argues that the Internet service provider was not a reliable informant and, consequently, the information it supplied to law enforcement should have been further corroborated before a search warrant was issued.

For the reasons that follow, the Court concludes that a screen name alone may (and, in this case, did) support a finding of probable cause and that the information supplied by the Internet service provider was sufficiently reliable such that no further corroboration by law enforcement was necessary. Accordingly, the application for search warrant articulated sufficient probable cause to justify the issuance of a search warrant for Mr. Sisson's residence. The Motion to Suppress is **DENIED.**

## II.

On January 2, 2004, America Online ("AOL"), an Internet service provider, discovered an email sent by an AOL subscriber with the screen name "letsrolearound" and an email address of letsrolearound@aol.com.[1] Attached to the email was an image that AOL employees identified as child pornography.[2] The image, the original file name of which was "6year_blowbb.jpg," depicted "a pre-pubescent, possibly Asian, female performing fellatio on an adult white male."[3] AOL forwarded the image and the screen name of the subscriber to the Sheriff's Office in Hillsborough County, Florida (the "Sheriff's Office").[4] Detective Grow of the Sheriff's Office caused a subpoena to be served upon AOL directing AOL to provide all account information relating to the AOL subscriber using the screen name "letsrolearound."[5] AOL provided the Sheriff's Office with information indicating that the subscriber with username "letsrolearound" was Susan Sisson of Lutz, Florida and that Sean Sisson, the defendant, was also on the account.[6] Upon further investigation, Detective Grow determined that Susan and Sean Sisson had moved from Florida to Hockessin, Delaware.[7] After learning that the Sissons no longer lived in Florida, Detective Grow forwarded the fruits of his investigation to the National Center for Missing and Exploited Children.[8] The

1. Probable Cause Aff. at ¶ 1.

2. *Id.*

3. *Id.*

4. *Id.*

5. *Id.* at ¶ 2, 815 A.2d 432.

6. *Id.*

7. *Id.* Detective Grow also discovered that Susan and Sean Sisson had two daughters and

two sons. In May 2002, the Hillsborough County Sheriff's Office investigated an allegation of child abuse involving Sean Sisson. The allegation involved inappropriate behavior involving one of his daughters. The case was cleared as unfounded. *Id.* at ¶ 3.

8. *Id.* at ¶ 4. The National Center for Missing and Exploited Children ("NCMEC") was established in 1984 as a private, nonprofit 501(c)(3) organization which provides services nationwide for families and professionals in the prevention of abducted, en-

NCMEC then forwarded the information to the Delaware State Police.[9] Detectives from the Delaware State Police verified that Susan and Sean Sisson obtained Delaware driver's licenses with a Hockessin, Delaware address.[10] Detectives further determined that Sean Sisson was the owner of Netvantage Solutions, a business that offered intranet development, computer support, software integration and Internet services.[11]

Detectives placed all of this information in an application and affidavit requesting a search warrant for Mr. Sisson's residence. They also included general information about the use of computers for child pornography and the habits of collectors of child pornography.[12] The application was reviewed by a Magistrate judge who found probable cause and issued a search warrant for Mr. Sisson's residence.

The warrant was executed on March 24, 2004. A number of items were seized from the Defendant's residence, including Mr. Sisson's business computer.[13] On this computer, detectives found several hundred pornographic images of prepubescent children engaged in various sex acts with adult males.[14] After being Mirandized, Mr. Sisson admitted that all of the child pornography on his business computer belonged to him.[15] He also admitted that he transmitted pornographic images of children to other individuals who collect and view these images via the Internet.[16] He further admitted that several of the images on his computer were of his thirteen year old daughter.[17]

Mr. Sisson was arrested and subsequently indicted as noted above. He now moves to suppress the evidence seized pursuant to the search warrant.

## III.

Mr. Sisson has presented three grounds for suppression of the evidence. First, he argues that the search warrant was defective because it did not include the date on which the pornographic image was sent and, therefore, the Magistrate could not evaluate the staleness of the information.

dangered, and sexually exploited children. Pursuant to its mission and congressional mandates, the NCMEC: serves as a clearinghouse of information about missing and exploited children; operates a CyberTipline that the public may use to report Internet-related child sexual exploitation; provides technical assistance to individuals and law-enforcement agencies in the prevention, investigation, prosecution, and treatment of cases involving missing and exploited children; assists the United States Department of State in certain cases of international child abduction in accordance with the Hague Convention on the Civil Aspects of International Child Abduction; offers training programs to law-enforcement and social-service professionals; distributes photographs and descriptions of missing children worldwide; coordinates child-protection efforts with the private sector; networks with nonprofit service providers and state clearinghouses about missing-persons cases; and provides information about effective state legislation to help ensure the protection of children. *See* 42 U.S.C. §§ 5771 *et seq.;* 42 U.S.C. § 11606; 22 C.F.R. § 94.6.

9. *Id.*

10. *Id.* at ¶ 5.

11. *Id.* at ¶ 7. Detectives further identified a Hockessin, Delaware address for Netvantage Solutions. They ultimately tracked the address down to a mailbox located at a Mailboxes, Etc. store. *Id.* at ¶ 8.

12. *Id.* at pp. 7–11.

13. D.I. 3, at 16.

14. *Id.*

15. *Id.*

16. *Id.*

17. *Id.*

He also argues that the search warrant was defective under *Franks v. Delaware*[18] because the detectives failed to include information in the search warrant application that would allow the Magistrate to determine whether Mr. Sisson was a victim of "email spoofing."[19] Mr. Sisson's final ground for suppression is that the information contained in the warrant was insufficient to support a finding of probable cause by the Magistrate. Specifically, he alleges that a screen name alone is not enough to link a particular individual to information transmitted over the Internet. Additionally, he contends that the Delaware State Police should have conducted their own independent investigation to corroborate the information provided to them because neither AOL nor the NCMEC are sufficiently reliable sources upon which to base a finding of probable cause. Mr. Sisson argues that the Delaware State Police improperly relied solely upon the information supplied to them by the NCMEC through the Sheriff's office which, in turn, relied upon information given to them by AOL, without any independent corroboration.

At an evidentiary hearing, the Court heard testimony and denied the suppression motion to the extent it argued that the application for a search warrant was submitted in violation of *Franks* and that it failed to set forth fresh evidence of criminal activity. As to the latter point, the Court relied upon *State v. Smith* to reject Mr. Sisson's argument that the information in the warrant was stale based on the nature of the evidence and the recognized behaviors of child pornography collectors.[20] As to the *Franks* issue, the Court denied suppression because Mr. Sisson failed to carry his burden of proving that the detectives omitted information regarding "spoofing" with reckless disregard for the truth.[21] At the conclusion of the evidentiary hearing, the Court reserved decision on Mr. Sisson's final basis for suppression, lack of probable cause, and requested that the State and Mr. Sisson provide the Court with authority on the issue of whether a screen name alone is

**18.** 438 U.S. 154, 155–56, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978) (finding that "[w]here the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to a finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request.").

**19.** Email spoofing occurs when a computer user receives email that appears to originate from one source when it actually was sent from another source. Email spoofing is often utilized to trick the user into releasing sensitive information (such as computer account passwords). Carnegie Mellon Software Engineering Institute, CERT Coordination Center, *Spoofed/Forged Email*, at http://www.cert.org/tech_tips/email_ spoofing.html.

**20.** 2004 WL 2744878, at *3, nn. 15, 16 (Del.Super.) ("In child pornography cases, courts have repeatedly recognized that collectors of child pornography tend to retain this material.... 'And I think it rises to the level of common knowledge, that imagery in computers is still in existence and is persistent. And in addition, this is not evidence that is like a gun, this is not evidence that's like drugs, this is not the kind of thing that typically gets recycled. This is a product that typically stays in a house, like a refrigerator or a bed. It's there for a long time. It isn't moved in and out overnight.' ").

**21.** *See Blount v. State*, 511 A.2d 1030 (Del. 1986) (stating that the defendant has the burden of establishing by a preponderance of the evidence that the omission was made with reckless disregard for the truth and that the inclusion of the information would have rendered the affidavit insufficient to establish probable cause).

enough to support a finding of probable cause.

Having now received the parties' submissions, the Court addresses two issues implicated by Mr. Sisson's probable cause argument: (i) whether the Magistrate reasonably could conclude that an image transmitted over the Internet and identified with a particular screen name was sent by the individual whose Internet account is linked to the screen name; and (ii) whether AOL and NCMEC were reliable sources.

## IV.

■■■ On a motion to suppress challenging the validity of a search warrant, the defendant bears the burden of establishing that the challenged search or seizure was unlawful.[22] Mr. Sisson has argued that the warrant authorizing the search of his residence was not supported

by probable cause. It is his burden to establish by a preponderance of the evidence that he is entitled to relief on that basis.[23]

## V.

The Delaware Constitution provides that a search warrant may be issued only upon a showing of probable cause.[24] The constitutional requirements for search warrants are codified in Sections 2306 and 2307 of Title 11 of the Delaware Code. Section 2306 provides that an application for a search warrant must "state that the complainant suspects that such persons or things are concealed in the house, place, conveyance or person designated [in the search warrant application] and shall recite the facts upon which such suspicion is founded."[25] Section 2307 provides that a warrant may issue only upon a judicial determination of probable cause.[26]

**22.** See 68 AM. JUR. 2D *Searches and Seizures* § 168 (2004) ("The burden of establishing the invalidity of a search warrant is upon the defendant."). *See, e.g., State v. Dick,* 2004 WL 1172883, at *3 (Del.Super.) ("It is well established that when motions to suppress are presented to this Court, the defendant bears the burden to show that his Fourth Amendment rights were violated as a result of the challenged search or seizure."); *State v. Jones,* 1997 WL 528274, at *3 (Del.Super.) ("When presenting a motion to suppress evidence, the defendant bears the burden of establishing that the challenged search or seizure violated his Fourth Amendment rights.").

**23.** *State v. Bien–Aime Smalls,* 1993 WL 138719, at *3 (Del.Super.) (citations omitted).

**24.** See DEL. CONST. art. I, § 6 ("The people shall be secure in their persons, houses, papers and possessions, from unreasonable searches and seizures; and no warrant to search any place, or to seize any person or thing, shall issue without describing them as particularly as may be; nor then, unless there be probable cause supported by oath or affirmation.").

**25.** DEL. CODE ANN. tit. 11, § 2306 (2001) ("The application or complaint for a search warrant shall be in writing, signed by the complainant and verified by oath or affirmation. It shall designate the house, place, conveyance or person to be searched and the owner or occupant thereof (if any), and shall describe the things or persons sought as particularly as may be, and shall substantially allege the cause for which the search is made or the offense committed by or in relation to the persons or things searched for, and shall state that the complainant suspects that such persons or things are concealed in the house, place, conveyance or person designated and shall recite the facts upon which such suspicion is founded.").

**26.** DEL. CODE ANN. tit. 11, § 2307 (2001) ("If the judge, justice of the peace or other magistrate finds that the facts recited in the complaint constitute probable cause for the search, that person may direct a warrant to any proper officer or to any other person by name for service. The warrant shall designate the house, place, conveyance or person to be searched, and shall describe the things or persons sought as particularly as possible, and may be returnable before any judge, jus-

■ It is well-settled that the Court must employ a "four-corners" test to determine whether an application for a warrant demonstrates probable cause.[27] Under this test, sufficient facts must appear on the face of the affidavit so that a reviewing court can glean from that document alone the factual basis for a determination that probable cause exists.[28] Stated differently, the supporting affidavit must set forth sufficient facts on its face "for a judicial officer to form a reasonable belief that an offense has been committed and that seizable property would be found in a particular place to support a finding of probable cause."[29] Additionally, the "test for probable cause [in support of a search warrant] is much less rigorous than that governing the admission of evidence at trial and requires only that a probability, and not a *prima facie* showing, of criminal activity be established."[30] Great deference must be paid by a reviewing court to the determination of a judge who has made a finding of probable cause to issue a search warrant.[31] Indeed, a finding of probable cause "will not be invalidated by a hypertechnical, rather than common sense, interpretation of a warrant affidavit."[32] And, when considering the sufficiency of the application for a search warrant, the reviewing court must consider the application "as a whole and not on the basis of separate allegations."[33]

### A. The Screen Name Adequately Linked The Defendant To The Crime

■ In this case, the first prong of the probable cause test—that an offense has been committed—is clearly satisfied on the face of the affidavit. The affidavit indicates that the police were in possession of a pornographic image of a child that had been transmitted over the Internet.[34] The image alone was the evidence of criminal activity; nothing more was required.

■ In order to determine that probable cause existed to authorize a search of Mr. Sisson's residence, however, the Magistrate was also obliged to consider whether the affidavit set forth facts that would permit him reasonably to conclude that child pornography would be found within the Sisson residence.[35] In this regard, the

tice of the peace or magistrate before whom it shall also direct to be brought the person or thing searched for if found, and the person in whose custody or possession such person or thing is found, to be dealt with according to law.").

27. See *Pierson v. State*, 338 A.2d 571, 573 (Del.1975) ("Sections 2306 and 2307 contemplate a 'four-corners' test for probable cause. . . .").

28. See *id.* ("Thus one looks only to the 'facts recited in the complaint.' ").

29. *State v. Manley*, 706 A.2d 535, 540 (Del.Super.Ct.1996). See also *Wilson v. State*, 314 A.2d 905, 906 (Del.1973) ("A search warrant can be legally issued only upon an affidavit establishing sufficient grounds for the warrant.").

30. *Jensen v. State*, 482 A.2d 105, 112 (Del. 1984).

31. See *id.* at 105 ("A determination of probable cause by the issuing magistrate will be paid great deference by the reviewing court. . . .").

32. *Id.*

33. *Gardner v. State*, 567 A.2d 404, 409 (Del. 1989), quoting *Jensen*, 482 A.2d at 111. See also *Fink v. State*, 817 A.2d 781, 787 (Del. 2003) ("In determining whether probable cause to obtain a search warrant existed, this court has adopted a 'totality of the circumstances' test.").

34. Probable Cause Aff. at ¶¶ 1, 4.

35. See *Hooks v. State*, 416 A.2d 189, 203 (Del. 1980) (reviewing court "must decide whether the issuing magistrate could reasonably have found that the evidence in the affidavit provided a reasonable ground for belief that the

application for a warrant must demonstrate a logical nexus between the items sought and the place to be searched.[36] Accordingly, when the Court reviews the affidavit to determine if probable cause existed to search Mr. Sisson's residence for child pornography, the information set forth within the affidavit's four corners, and any logical inferences from the specific facts alleged, must demonstrate that it was objectively reasonable for the police to expect to find child pornography within the residence.[37]

Mr. Sisson argues that an Internet screen name, without independent corroboration of the identity of the sender of the child pornography, is insufficient to establish probable cause to issue a search warrant. The State disagrees. Both Mr. Sisson and the State have provided authority in support of their respective positions.[38] Of the authority submitted, the Court finds

State v. Evers[39] most factually and legally on point. In Evers, a detective entered a child Internet pornography "chat room."[40] The detective then received an email containing two pictures of a naked child from a sender with a particular screen name.[41] The billing account information for the screen name that sent the image was obtained from AOL, which led police to the defendant's residence.[42] With this information in hand, along with a description of how child pornographers rarely destroy the photographs and images in which they trade, detectives applied for a search warrant of the residence of the individual whose Internet account was linked to the screen name. A magistrate judges found probable cause and issued a warrant for the search of the defendant's residence.[43]

The New Jersey Supreme Court upheld the magistrate's finding of probable

articles sought by the police as evidence could be found at [the defendant's] residence.").

36. *Id.*

37. *See Gardner*, 567 A.2d at 409; *Hooks*, 416 A.2d at 203; *Jensen*, 482 A.2d at 110–11.

38. *See, e.g., State v. Evers*, 175 N.J. 355, 815 A.2d 432 (2003) (holding that although the subscriber information attached to a screen name may not guarantee that the subscriber has committed criminal activity, it is sufficient to establish probable cause); *U.S. v. Bailey*, 272 F.Supp.2d 822 (D.Neb.2003) (finding that screen name linked defendant to the child pornography and established probable cause); *U.S. v. Chrobak*, 289 F.3d 1043 (8th Cir.2002) (holding that child pornography sent from a screen name lead to probable cause); *Hause v. Commonwealth*, 83 S.W.3d 1 (Ky.Ct.App.2001) (finding that screen names reveal the identity of the user of a screen name); *U.S. v. Grant*, 218 F.3d 72 (1st Cir. 2000) (holding that a screen name attached to 10,000 images of child pornography was sufficient information to establish probable cause); *U.S. v. Wagers*, 339 F.Supp.2d 934 (E.D.Ky.2004) (holding that purchasing subscriptions for three child pornography websites was sufficient to establish probable

cause); *U.S. v. Djelilate*, 201 F.3d 437 (4th Cir.1999) (finding probable cause when defendant placed an order for child pornographic over the Internet through a screen name); *U.S. v. Cox*, 190 F.Supp.2d 330 (N.D.N.Y. 2002) (holding that trading images from a screen name provides probable cause). *But see, e.g., Taylor v. State*, 54 S.W.3d 21 (Tex.Ct. App.2001) (finding that the warrant application and affidavit were insufficient to establish probable cause); *U.S. v. Gourde*, 382 F.3d 1003 (9th Cir.2004)(finding that a subscription to a child pornography website under a screen name or email address did not support probable cause to search the user's residence); *U.S. v. Strauser*, 247 F.Supp.2d. 1135 (E.D.Mo.2003) (same); *U.S. v. Perez*, 247 F.Supp.2d 459 (S.D.N.Y.2003) (same).

39. 175 N.J. 355, 815 A.2d 432 (2003).

40. *Id.* at 447.

41. *Id. See also* Probable Cause Aff. at ¶ 1.

42. *Id. See also* Probable Cause Aff. at ¶ 2.

43. *Id.* at 448. *See also* Probable Cause Aff. at pp. 7–11.

cause.[44] First, the court found that there was probable cause that the computer would be found within the defendant's residence.[45] The court reasoned that "[t]he billing address of an account tied to a computer screen name may not be an absolute guarantee that the holder of the computer screen name used the computer at the billing address to commit criminal activity, but there is a fair and logical inference that the computer will *probably* be found at the address and, if not, at least evidence of the identity of the screen name will be found there."[46] Next, the court concluded that there was probable cause to find that child pornography would be found on the computer used by the person with that particular screen name.[47] In making this conclusion, the court relied upon the detective's general description of the tendencies of child pornographers along with the legal authority supporting his assertions.[48]

Mr. Sisson attempts to distinguish *Evers* on the basis that, in *Evers*, the defendant had sent images to fifty other screen names. Here, only one image was transmitted to only one screen name. Like blue on black, the distinction proffered by Mr. Sisson does not alter the analytical picture. Possession or transmission of one image of child pornography is sufficient to violate Delaware's child pornography statute. Thus, whether Mr. Sisson sent one image or fifty images makes no difference in the analysis of whether the application sets forth evidence of a crime or information linking a particular residence or location to the crime.[49]

 Applying the reasoning of *Evers,* the Court finds that an Internet screen name alone can be sufficient to link the Internet subscriber associated with that screen name to criminal activity for purposes of establishing probable cause. While it may well be that the screen name will not provide *prima facie* evidence of identity, it is certainly adequate in most cases "to warrant a reasonable [person] in the belief that seizable property would be found" at the address of the Internet subscriber with whom the screen name is registered.[50] In this case, the defendant has failed in his burden of supplying any evidence or other basis to cause the Court to question the Magistrate's determination that the address linked to the screen name that sent the pornographic image would yield evidence of the criminal activity.

Although the Court has concluded that *Evers* is persuasive authority, there is one factual distinction between this case and

44. *Evers,* 815 A.2d at 448.

45. *Id.*

46. *Id.*

47. *Id.*

48. *Id.*

49. *See* DEL. CODE ANN. tit. 11, § 1111 (2001) ("A person is guilty of possession of child pornography when: (1) the person knowingly possesses any visual depiction of a child engaging in a prohibited sexual act or in the simulation of such an act; or (2) the person knowingly possesses any visual depiction which has been created, adapted, modified or edited so as to appear that a child is engaging

in a prohibited sexual act or in the simulation of such an act."); DEL. CODE ANN. tit 11, § 1109 (2001) ("A person is guilty of dealing in child pornography when: (1) The person knowingly ships, transmits, mails or transports by any means, including by computer or any other electronic or digital method, any book, magazine, periodical, pamphlet, video or film ... [or] any other visual depiction of a child engaging in a prohibited sexual act or in the simulation of such an act; ....").

50. *Wilson v. State,* 314 A.2d 905, 906 (Del. 1973). *See also Jensen,* 482 A.2d at 112 (test for probable cause "much less rigorous" than test for *prima facie* evidence at trial).

*Evers* that the Court must examine further. In *Evers,* and other cases where courts have found probable cause based upon the defendant's screen name, the image of child pornography was intercepted or received directly by law enforcement.[51] In this case, AOL intercepted the image and forward it along with the screen name to law enforcement. Then, pursuant to a subpoena, AOL provided law enforcement with the subscriber information for the screen name that transmitted the image. Detectives from the Delaware State Police subsequently used that information to request a search warrant for Mr. Sisson's residence. Under these circumstances, the Court must determine whether the civilian sources that provided the information to law enforcement were reliable.

### B. The Reliability of AOL and The NCMEC

■ Mr. Sisson argues that neither AOL nor NCMEC are reliable sources and that any finding of probable cause based on information from these sources is flawed as a matter of law. According to Mr. Sisson, before officers could seek a search warrant for the Sisson residence, they first needed to corroborate the information that both AOL and the NCMEC had provided.

■ Affidavits in support of search warrants can establish probable cause either by setting forth the personal observa- tions of criminal activity made by a law enforcement affiant or by recounting the incriminating reports of an informer or third-party witness, i.e., hearsay.[52] If based on hearsay, "the affidavit must con- tain reasonable corroboration of the hear- say report, meaning: (1) that the magis- trate must be satisfied that the affidavit reveals the underlying circumstances from which the informant drew the conclusion that criminal activity occurred; and (2) that there are sufficient reasons for believ- ing that the informant's information is reli- able."[53]

■ When information is supplied to law enforcement through a tip, the relia- bility of the so-called "tipster" determines how much corroboration, if any, is neces- sary to meet the probable cause standard for a search warrant to issue. Information supplied by informants who are not pre- sumed reliable by the court will require additional corroboration before the infor- mation will be deemed reliable. For ex- ample, a tip supplied by an anonymous informant does not, by itself, provide prob- able cause for law enforcement.[54] Addi- tionally, information supplied to law en- forcement by other criminals is generally suspect, and will require corroboration or other indicia of reliability before law en- forcement can establish probable cause.[55] When the source of the tip is a named citizen informant, however, no corrobora- tion is necessary to establish the reliability

---

51. *Id.* at 447. *See, e.g., U.S. v. Bailey,* 272 F.Supp.2d 822, 828 (D.Neb.2003); *U.S. v. Chrobak,* 289 F.3d 1043, 1044 (8th Cir.2002); *Hause v. Commonwealth,* 83 S.W.3d 1, 4 (Ky. Ct.App.2001).

52. *Wilson v. State,* 314 A.2d 905, 907 (Del. 1973).

53. *Id.*

54. *See Flonnory v. State,* 805 A.2d 854, 858 (Del.2001) (holding that a tip from an anony- mous source without any corroboration does not even establish reasonable suspicion); *Jones v. State,* 745 A.2d 856, 873–74 (Del. 1999) (same); *State v. Potts,* 2001 WL 1729129 (Del.Super.) (same).

55. *See State v. Saunders,* 2000 WL 703021, at *2 (Del.Super.) (finding that "even though the [criminal] informant was not labeled as reli- able," the information supplied by the infor- mant was sufficiently corroborated).

of the information.[56] The information is presumed to be reliable because citizens have no reason to fabricate criminal activity; they are presumed to have no interest in the matter.[57]

Here, AOL provided law enforcement with two pieces of information, the image of child pornography sent by user name "letsrolearound" and the subscriber information for "letsrolearound." The affidavit of probable cause clearly reveals the circumstances that led AOL to conclude that criminal activity had occurred. AOL discovered the pornographic image of a child that was an attachment to an email sent by an AOL subscriber using a particular screen name.[58] AOL was in possession of the image—the *corpus delicti* of the criminal activity. AOL then forwarded the image and screen name to the Sheriff's Office.[59] This information did not come from an anonymous source; it came from a recognized, well-established Internet provider.

Again, it is important to emphasize the deference afforded to the magistrate's determination of probable cause as well as the standard of review.[60] The burden is on Mr. Sisson to demonstrate that the warrant lacked probable cause and, more specifically, that AOL and the information it provided to law enforcement were unreliable.[61] Yet he has offered no basis for the Court to conclude that AOL lacked reliability. To the contrary, the record reveals that AOL discovered the image, identified it as child pornography, and forwarded it to the police along with the screen name of the person who sent the image. AOL was essentially a citizen witness to a crime and, as such, is presumed to be reliable.[62] Accordingly, the Court finds that, under the circumstances, AOL was a reliable informant and no independent corroboration of the information provided by AOL was required.

■■ Mr. Sisson also argues that the NCMEC is not reliable. A review of the application for search warrant indicates that the extent of NCMEC's involvement in this case was to forward the information it received from the Sheriff's Office on to the Delaware State Police. The NCMEC did not provide the Delaware State Police with any additional information; it simply performed its statutorily prescribed role as a "clearinghouse" of information regarding potential child pornography or exploitation.[63] Hence, the NCMEC was not an

---

**56.** *See State v. Quinn,* 1995 WL 412355, at *4 (Del.Super.) ("[U]nder Delaware law, there is a presumption of reliability of statements made by concerned citizens to police authorities, given their interest in stopping criminal wrongdoing."); *Bailey v. State,* 440 A.2d 997, 999 (Del.1982)(finding that a citizen informant is presumed reliable). *See also* Wayne r. LaFave et al, Search and Seizure § 3.4 at 219 (4th ed. 2004)("It is generally agreed, however, that [corroboration] is not needed to establish veracity when the information comes from an average citizen who is in a position to supply information by virtue of having been a crime victim or witness.").

**57.** *See Quinn,* 1995 WL 412355, at *4; *Bailey,* 440 A.2d at 999 *citing Hooks v. State,* 416 A.2d 189, 202 (Del.Supr.) ("[A] citizen 'is a passive observer with no connection with the underworld, and no reason to fabricate what he has seen or heard, and as such is considered presumptively reliable.' ").

**58.** Probable Cause Aff. at ¶ 1.

**59.** *Id.*

**60.** ˙ *See Jensen,* 482 A.2d at 105.

**61.** *See Searches and Seizures, supra* note 22, § 168. *See also Dick,* 2004 WL 1172883, at *3; *Jones,* 1997 WL 528274, at *3.

**62.** *See Quinn,* 1995 WL 412355, at * 4; *Bailey,* 440 A.2d at 999.

**63.** Probable Cause Aff. at ¶ 4. As stated on the top of the NCMEC CyberTipline Report, the

informant and its reliability is not relevant to a determination of whether there was sufficient probable cause to issue the search warrant in this case.

## VI.

In conclusion, the Court finds that the warrant to search the Sisson residence was supported by probable cause. Mr. Sisson's screen name was sufficient to link Mr. Sisson to the image of child pornography transmitted over the Internet and discovered by AOL. Additionally, AOL was a reliable informant in this case. In discovering the image of child pornography sent by Mr. Sisson, AOL was the equivalent of a citizen witness to a crime. As such, AOL and the information it provided to law enforcement are presumed reliable and Mr. Sisson has not overcome this presumption of reliability. Finally, the Court finds that NCMEC was not an informant because it did not provide law enforcement with any additional information. The issuance of the search warrant for Mr. Sisson's residence was proper because it was supported by probable cause.

Based on the foregoing, Defendant's Motion to Suppress Evidence is **DENIED.**

**IT IS SO ORDERED.**

"NCMEC forwards all information unedited to law enforcement agencies for investiga- tion...." Def.'s Ex. 2.