**SUPERIOR COURT**
OF THE

VIVIAN L. MEDINILLA
JUDGE

LEONARD L. WILLIAMS JUSTICE CENTER
500 NORTH KING STREET, SUITE 10400
WILMINGTON, DE 19801-3733
TELEPHONE (302) 255-0626

April 4, 2019

Michael B. Cooksey, Esquire
Delaware Department of Justice
820 N. French Street, 7th Floor
Wilmington, DE 19801

John A. Barber, Esquire
Law Office of John A. Barber
24B Trolley Square
Wilmington, DE 19806

> **Re:** *State of Delaware v. Vincent McCants*
> <u>**Case ID: 1810013206**</u>

Dear Counsel:

This is the Court's ruling on Defendant's Motion to Suppress in the above-captioned case. For the following reasons, Defendant's Motion to Suppress is **GRANTED**.

### *Factual and Procedural Background*

Vincent McCants ("McCants") is charged with Possession of a Firearm by a Person Prohibited, Possession of Ammunition by a Person Prohibited, and two counts of Drug Dealing. This is a four-corners review. The following facts are provided in the search warrant affidavit:

Detective Michael Lilley ("Lilley") is a Corporal with the Delaware State Police, assigned to the Troop 2 Drug Task Force ("DTF").[1] During August 2018, Troop 2 DTF members received information from a confidential source that McCants was selling drugs, specifically heroin, in the *New Castle County area.*[2] Two months later, officers ran an inquiry on McCants, and it was revealed that he had an active capias for failure to pay for driving without a valid driver's license, his license was suspended or revoked, and he listed his address as 2424 Squirrel Drive

---

[1] Def.'s Mot., Ex. A at 3 ¶ 1 [hereinafter Aff. ¶ __].
[2] Aff. ¶ 4 (emphasis added).

in Bear, Delaware ("McCants' residence").[3]   On October 23, 2018, officers conducted surveillance near building 2420, the building of McCants' second-floor apartment.[4]   At 11:10 am, an officer observed McCants exiting "the area of 2424 Squirrel Drive and began walking down the steps from the second floor."[5]   He was observed entering a gold Nissan Altima before leaving the area.[6]

He then traveled to the Taco Bell parking lot, where members of the DTF saw a white male enter the passenger side of McCants' vehicle.[7]   The officers observed this male exit the vehicle and "appeared to be concealing an object in his left hand;" the male returned to a yellow pick-up truck and exited the area.[8]   Then, McCants entered the passenger side of a silver vehicle where he stayed for a short period before exiting and re-entering the driver side of his vehicle.[9]   Lilley believed this was consistent with hand-to-hand drug transactions.[10]

Next, the vehicle traveled to a BP Gas Station and McCants parked in the parking lot near the Lobdell Street exit.[11]   Two black males approached McCants' car and left shortly on foot.  This was also believed by the officer to be consistent with a drug transaction.[12]   After approximately 25 minutes, McCants left that area, and parked near 322 South Claymont Street.[13]   He exited the vehicle and walked up and down South Claymont Street while talking on the phone.[14]   He then returned to his vehicle and drove to the Macy's parking lot at the Christiana Mall.[15]

At the mall, Detective Macauley approached the driver's side of McCants' car and arrested him for the active failure to pay capias.[16]   During the search incident to

---

[3] Aff. ¶ 5.
[4] *Id.* ¶ 6.
[5] *Id.*
[6] *Id.*  The gold Nissan Altima is registered to Tabitha Goodman.
[7] *Id.* ¶ 7.
[8] Aff. ¶ 7.
[9] *Id.*
[10] *Id.*
[11] *Id.* ¶ 8.
[12] *Id.*
[13] Aff. ¶ 8.
[14] *Id.*  The officers maintained surveillance during this time.
[15] *Id.* ¶ 9.
[16] *Id.*

arrest, officers found in his possession 4 Suboxone films, without a prescription, and $394 of cash.[17] McCants and the vehicle were transported to Troop 2.[18]

Lilley sought and obtained a search warrant of his car and residence and stated in the affidavit that he "believes evidence can be located at McCants [sic] listed address of 2424 Squirrel Drive, which McCants was observed exiting prior to completing all of the drug transactions."[19] During the search of the residence, officers seized a .40 handgun and other items.[20] On February 26, 2019, McCants filed his Motion to Suppress. The State responded on March 22, 2019. A suppression hearing was heard on March 26, 2019. The matter is now ripe for review.

### *Parties' Contentions*

Relying on *State v. Cannon*,[21] McCants requests the evidence obtained from the search of his residence be suppressed.[22] McCants argues the affidavit is deficient in establishing an evidentiary nexus that drugs or the other items sought in the warrant would be located at McCants' residence.[23] The State maintains that Lilley's surveillance of the building, particularly that he observed McCants exiting the second floor of the building where his residence was located, allowed a magistrate to make a reasonable inference that he was exiting apartment 2424.[24] It further argues that the affidavit provides sufficient information to establish an evidentiary nexus between his residence and the contraband items police sought.[25] The State did not rely or provide other authority except for references that may distinguish this case from *Cannon* and *Valentine v. State*.[26]

---

[17] Aff. ¶ 9.
[18] *Id.* ¶¶ 9-10.
[19] *Id.* ¶ 11.
[20] Def.'s Mot. at 2.
[21] 2007 WL 1849022 (Del. Super. June 27, 2007).
[22] Def.'s Mot. at 10.
[23] Def.'s Mot. at 1-2, 5. Defendant's residence was searched on October 23, 3018.
[24] State's Resp. at 5.
[25] *Id.* at 8.
[26] 2019 WL 1273689 (Del. Mar. 20, 2019).

## Standard of Review

When a Defendant challenges the validity of a search warrant on a motion to suppress, "the defendant bears the burden of establishing that the challenged search or seizure was unlawful."[27] On a motion to suppress, the burden of proof "is proof by a preponderance of the evidence."[28]

## Discussion

Citizens have the right to be free from unreasonable searches and seizures under Article I, § 6 of the Delaware Constitution and the Fourth Amendment of the United States Constitution.[29] Under Delaware law, 11 *Del. C.* §§ 2306 and 2307 discuss the application for a search warrant and the magistrate's role in issuing a search warrant.[30] Section 2306 provides:

> The application or complaint for a search warrant shall be in writing, signed by the complainant and verified by oath or affirmation. It shall designate the house, place, conveyance or person to be searched and the owner or occupant thereof (if any), and shall describe the things or persons sought as particularly as may be, and shall substantially allege the cause for which the search is made or the offense committed by or in relation to the persons or things searched for, and shall state that the complainant suspects that such persons or things are concealed in the house, place, conveyance or person designated and shall recite the facts upon which such suspicion is founded.[31]

An "affidavit in support of a search warrant must, within the four-corners of the affidavit, set forth facts adequate for a judicial officer to form a reasonable belief

---

[27] *State v. Sisson*, 883 A.2d 868, 875 (Del. Super. 2005), *aff'd*, 903 A.2d 288 (Del. 2006) (citations omitted) [hereinafter *Sisson I*].

[28] *State v. Iverson*, 2011 WL 1205242, at *3 (Del. Super. Mar. 31, 2011) (citation omitted).

[29] *See* U.S. Const. amend. IV; Del. Const. art. I, § 6; *State v. Adams*, 13 A.3d 1162, 1172 (Del. Super. Aug. 22, 2008) (citations omitted).

[30] 11 *Del. C.* § 2306; 11 *Del. C.* § 2307.

[31] 11 *Del. C.* § 2306.

that an offense has been committed and the property to be seized will be found in a particular place."[32] The totality of the circumstances test is used to determine "whether probable cause to obtain a search warrant exists."[33] An affidavit "establishes probable cause to search only where it contains a nexus between the items sought and the place to be searched."[34] This creates a two-part inquiry to establish probable cause: "(1) probable cause that a crime was committed; and (2) probable cause to believe that evidence of that crime will be found at the residence."[35]

A magistrate's probable cause determination should be reviewed with great deference and should not "take the form of a de novo review."[36] A magistrate's probable cause determination should be considered "as a whole in a practical, commonsense manner, and not on the basis of a hypertechnical analysis of its separate allegations."[37] The reviewing court's "duty is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed."[38]

Both sides rely on *Cannon* and *Valentine* to support their positions. *Cannon* focuses on the evidentiary nexus between the items sought and the place to be searched in the warrant application. Focusing on that nexus, in *Cannon*, the Superior Court suppressed evidence seized in defendant's residence for reasons that closely align with the facts of this case.

*Valentine* instead focuses, in part, on the reliability, basis of knowledge, and corroboration of an informant's tip.[39] In this more recent decision, the Supreme Court reversed the trial court's ruling that had denied defendant's motion to suppress. The Supreme Court considered a similar warrant to search for a firearm and ammunition, and determined the evidence seized from the search of the

---

[32] *Sisson v. State*, 903 A.2d 288, 296 (Del. 2006) (citations omitted) [hereinafter *Sisson II*].

[33] *Id.* (citing *Fink v. State*, 817 A.2d 781, 787 (Del. 2003); *Gardner v. State*, 567 A.2d 404 (Del. 1989)).

[34] *Adams*, 13 A.3d at 1173 (citing *Hooks v. State*, 416 A.2d 189, 203 (Del. 1980)).

[35] *Id.* (citing *Hooks*, 416 A.2d at 203).

[36] *State v. Holden*, 60 A.3d 1110, 1114 (Del. 2013) (quoting *Illinois v. Gates*, 462 U.S. 213, 238-39 (1983)).

[37] *Sisson II*, 903 A.2d at 296 (citing *Smith v. State*, 887 A.2d 470, 473 (Del. 2005)).

[38] *Id.* (citations omitted).

[39] *See Valentine*, 2019 WL 1273689, at *4-8 (analyzing credibility and reliability of informant and the tip).

apartment and vehicle should have been suppressed.[40] The similarities and distinctions here weigh in favor of the same result as in *Cannon* and *Valentine*.

First, like *Cannon,* the confidential source here was not past proven reliable. And although in *Valentine* the tip was provided by an individual identified by police as past proven reliable,[41] the Supreme Court found that "the affidavit was insufficient to establish the informant's credibility on the basis of past performance"[42] and the "warrant affidavit [did] not contain any self-verifying detail that [could] stand in the place of first-hand knowledge so that the magistrate could reasonably know that the informant knew what she was talking about."[43] Here, this Court finds that the affidavit is silent as to the source's first-hand knowledge related to the drug-related activity that presumably was taking place in the county, let alone his apartment. This leads to the next point.

Not only are the credibility and reliability of the informant questionable, the tip is overly broad and makes no mention of McCants' residence. Unlike *Valentine* that identified defendant's residence, and *Cannon* that suggested drug-activity was taking place in certain named intersections or street corners in a particular neighborhood, here the tip does not hint that the criminal activity was occurring in, near, or even around the area of his apartment. The extent of the tip was that McCants was selling drugs in the New Castle County area. The *Cannon* court considered similar tips that did not allege that "Cannon was using his residence to deal drugs or to store drugs, drug paraphernalia, or any other evidence of drug transactions."[44] In doing so, that Court found that "without additional factual information giving rise to a probability that evidence would be found in Cannon's residence, it was unreasonable for the issuing magistrate to accept the affidavit's content as supporting the evidentiary nexus necessary for a search of [the residence]."[45] This is also the case here.

---

[40] *See Valentine*, 2019 WL 1273689, at *9 (reversing Defendant's judgments of conviction of the Superior Court and remanding).

[41] *See id.* at *3.

[42] *Id.* at *5 (discussing veracity and reliability of informant).

[43] *Id.* at *6 (explaining informant's basis of knowledge).

[44] *Cannon*, 2007 WL 1849022, at *5 (citations omitted).

[45] *Id.* at *6 (suppressing evidence seized from the search of defendant's residence because the affidavit "did not provide a substantial from which the issuing judicial officer could reasonably conclude that probable cause to execute a residence search existed").

Third is the issue of corroboration and other factors that could have been considered in establishing probable cause. The *Valentine* Court considered several facts from the affidavit to include that a tip identified the defendant's address, the defendant was seen leaving his home, and he was seen meeting with another male where a duffle bag was exchanged.[46] Here, McCants is also seen leaving his home and meeting with unknown individuals. The officer stated that he observed what he believed were hand-to-hand transactions,[47] to include that the officers observed a male exit McCants' vehicle and "appeared to be concealing an object in his left hand." Notably, in *Cannon,* the search of his apartment was deemed unconstitutional despite the fact that the officer stopped the driver of another car that Cannon had recently exited, seized the cocaine in that case, and further confirmed that Cannon had provided the cocaine.[48] Here, the officers did not question the individuals or seize what could have been the alleged drugs exchanged to corroborate the accuracy of what was observed. Even if they had, it still does not connect the criminal activity to his apartment. This leads to the surveillance of his apartment building.

The tip was stale and the surveillance was not conducted to corroborate the information from the confidential source. The information of drug-related activity in the New Castle County area was provided to police officers in August 2018 yet they began their surveillance two months later in October 2018. Moreover, the decision to conduct surveillance was not made to corroborate the tip since the tip said nothing about McCants' residence. Instead, surveillance was conducted because the DELJIS check confirmed McCants had an outstanding capias for failing to pay for driving without a valid driver's license or other related driving infractions. This DELJIS check revealed a last known address and the surveillance confirmed that he was seen coming from the second floor of the building at the stated address. The State is correct that the magistrate could reasonably infer that since his apartment is on the second floor, then he could have been exiting his apartment. Beyond that inference, this additional information provides nothing more. As in *Valentine,* where the Supreme Court found that additional information did not weigh

---

[46] *See Cannon*, 2007 WL 1849022, at *3-4 (summarizing "key factual assertions" in the affidavit).
[47] Aff. ¶¶ 7-9.
[48] *See Cannon*, 2007 WL 1849022, at *2.

in favor of the magistrate's finding of probable cause,[49] the Court finds that this surveillance yielded no more than that he was residing where he last stated.

Under *Cannon* and *Valentine,* this Court finds that the facts within this affidavit fail to establish the requisite nexus between the items sought—drugs, related paraphernalia, and firearms—and the place to be searched—McCants' residence. In giving deference to the magistrate's determination, this Court finds that within the four-corners of the affidavit, viewed in light of the totality of the circumstances, the magistrate did not have a substantial basis for concluding that probable cause existed to issue a search warrant for McCants' residence. Thus, the search of 2424 Squirrel Drive in Bear, Delaware violated the Fourth Amendment of the United States Constitution and Article I, § 6 of the Delaware Constitution. Therefore, Defendant's Motion to Suppress is **GRANTED**.

**IT IS SO ORDERED.**

Vivian L. Medinilla
Judge

oc: Prothonotary
cc: Defendant
Office of Investigative Services

---

[49] *Valentine,* 2019 WL 1273689, at *6-8 (looking at additional factors including the defendant's altercation with another resident of the apartments, his arrest on March 19, 2016, his criminal history, and the officers' surveillance of the defendant).