# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| STATE OF DELAWARE, | ) | |
| | ) | |
| v. | ) | I.D. No. 2408006770 |
| | ) | 2409012009 |
| JOHN F. CRESTO, | ) | 2410007848 |
| | ) | 2411007824 |
| Defendant. | ) | |
| | ) | |

Date submitted: June 13, 2025
Date decided: July 8, 2025

*Upon Defendant's Motion to Suppress:* ***DENIED***.

## I.    *Introduction*

New Castle County police obtained a warrant to search John Cresto's ("Cresto") vehicle and another warrant to search his cell phone. Cresto was accused of sending the victim threatening and harassing text messages, damaging the victim's house with a BB gun, and stealing her Ring cameras. He sent the victim a photo and video from inside his vehicle, showing him with her stolen mailbox. Cresto moved to suppress the evidence obtained through the search warrants, asserting that the affidavits failed to establish a nexus between the places to be searched and the items sought and that the cell phone warrant was temporally overbroad.

When the first search warrant was issued, Cresto was believed to be living in his car, and he had sent the victim a video and photo of the victim's property in the

car.  Under the totality of the circumstances, and drawing reasonable inferences from the facts, the affidavit established a nexus between the vehicle and the items sought.

The cell phone was found in Cresto's possession when he was arrested, and a reviewing magistrate could reasonably infer that the phone belonged to Cresto, thus establishing the nexus.

Finally, the cell phone warrant was temporally limited to the relevant time period.  For the reasons discussed below, the Motion to Suppress is **DENIED**.

## II.  *Factual Background*

The following facts are derived from the September 24, 2024, affidavit in support of the warrant to search Cresto's vehicle (the "Vehicle Warrant").  On August 23, 2024, New Castle County Police responded to a call from a homeowner reporting that her rear sliding glass door had been shattered and that she believed someone was trying to break into her home.  Officer Cardile observed cracked glass and damage to the window and vinyl siding around the door, consistent with damage from a BB gun.  The victim reported that she believed her ex-boyfriend was responsible for the damage.

The victim also told Officer Cardile that her ex-boyfriend had been sending her harassing text messages.  The victim showed the officer multiple text messages from the ex-boyfriend sent between August 8, 2024 and August 12, 2024.  In an August 8 text chain, the ex-boyfriend demanded to know who the victim was dating.

2

When she refused to communicate with him further, the ex-boyfriend texted: "you're either going to give up his information or get your **** ******* trashed because I shifted my focus somewhere else." The ex-boyfriend continued berating the victim, swearing at her and threatening her. The ex-boyfriend stated: "And that camera getting ripped the **** down."

In an August 9, text, the ex-boyfriend berated the victim about getting his mail from her residence. The text continued, "I wonder where your fat ***** put that ring doorbell camera at" and "the other cameras coming off your crib ASAP that doesn't belong there." The ex-boyfriend then sent a video of him driving and throwing the victim's mail out of his car window. The ex-boyfriend also sent a photo of what the victim identified as her mailbox in the front seat of his Nissan Altima.

In an August 10 text message, the ex-boyfriend stated: "when you get in the crib and something gets smashed out it's not as fun when nobody there." He sent a text on August 11 stating: "hurry up and go to sleep so I can wake you the ***** up lol turn the lights off." On August 12 he wrote "like the only reason I haven't kicked off that door yet is because your daughter is there but as soon as I know, she's not there I'm doing **** like that."

The victim told the officer that on August 13, 2024, her Ring floodlight camera and Ring doorbell camera were stolen. She reported that the cameras recorded the theft before they were disconnected, which the officer reviewed. The

3

video showed a male wearing a black hoodie, with a mask covering his face, "distinct blue and grey gloves" and dark pants, reaching for the camera. Based on the male's height, hair, gait, and appearance, the victim identified him as the ex-boyfriend.

The victim contacted Office Cardile on September 19, reporting that the ex-boyfriend continued sending threatening and harassing messages. The officer reviewed text messages from August 24 and September 19. The victim provided the officer with the ex-boyfriend's telephone number: 302-xxx-0749. The officer conducted a search of the law enforcement database and determined that this phone number belonged to Cresto. A warrant for Cresto's arrest was issued on September 23, 2024, for Stalking, Theft, and Harassment.

The victim advised Officer Cardile that Cresto was homeless and living in his car and "couch surfing." She identified his vehicle as a red Nissan Altima. The officer conducted a database search, which revealed that the Altima was registered to Cresto.

On September 24, 2024, a warrant was issued to search the Altima for: any video and still photography, any Ring doorbell and/or Ring floodlight cameras, any BB gun or BBs, and any cell phone. Because such items could be hidden anywhere within the vehicle, the officer requested authority to search the entirety of the vehicle.

4

Cresto was taken into custody on October 15, 2024. At that time, he was in possession of a black Apple iPhone.

Officer Cardile executed another affidavit on October 25, which included the facts stated above and the following facts. The victim contacted Officer Cardile on October 6, 2024, reporting that Cresto had sent additional harassing and threatening text messages that day. Officer Cardile sought to search the cell phone ("Cell Phone Warrant") for (1) user account data, (2) GPS/location data, (3) photographs/videos as provided by the victim, and (4) incoming and outgoing text messages for the period of August 8, 2024 to October 6, 2024.

## III. *Standard of Review*

### A. *The four-corners test*

A defendant may move to suppress evidence under Superior Court Criminal Rules 41(f) and 12(b)(3). The Fourth Amendment of the United States Constitution and Article I, Section 6, of the Delaware Constitution, protect against unreasonable searches and seizures.[1] Under the United States and Delaware Constitutions, a search warrant may be issued only upon the showing of probable cause.[2]

---

[1] *Pollard v. State*, 284 A.3d 41, 45 (Del. 2022).
[2] U.S. Const. Amend. IV; Del. Const. Art. I, § 6; *Fink v. State*, 817 A.2d 781, 786 (Del. 2003).

"It is well-settled that the Court must employ a 'four-corners' test to determine whether an application for a warrant demonstrates probable cause."[3] "Probable cause to search depends upon the existence of a logical nexus between the items sought and the place to be searched."[4] "[T]he factual showing necessary to establish probable cause to search is two-fold: first, there must be probable cause that a crime was committed, and second, there must be probable cause to believe that evidence of such crime can be found at the [place to be searched]."[5] Additionally, the "'warrant must describe the things to be searched with sufficient particularity and be no broader than the probable cause on which it is based.'"[6] In determining whether probable cause exists to obtain a search warrant, Delaware courts apply a "totality of the circumstances" test.[7]

The reviewing court must give "great deference" to the reviewing magistrate.[8] A reviewing court must determine whether the supporting affidavit "set[s] forth

---

[3] *State v. Sisson*, 883 A.2d 868, 876 (Del. Super. 2005), *aff'd* 903 A.2d 288 (Del. 2006) (citing *Pierson v. State*, 338 A.2d 571, 573 (Del. 1975)); *State v. Cannon*, 2007 WL 1849022, at *3 (Del. Super. June 27, 2007) ("The face of the affidavit must present adequate facts to allow a reasonable person to conclude that an offense has been committed and that seizable property would be found in a particular place or on a particular person.").

[4] *Cannon*, 2007 WL 1849022, at *4 (citations omitted) ("Requiring this nexus upholds the probable cause requirements of the Federal and State constitutions and properly maintains the distinction between probable cause to arrest and probable cause to search.").

[5] *Id.* (citations omitted).

[6] *State v. Chaffier,* 2023 WL 1872284, at *3 (Del. Super. Jan. 17, 2023) (quoting *Wheeler v. State*, 135 A.3d 282, 299 (Del. 2016)).

[7] *Id.*

[8] *Sisson* at 876 (Del. Super. 2005); *State v. Holmes*, 2023 WL 3991641, at *2 (Del. Super. June 13, 2023) (citations omitted).

sufficient facts on its face for a judicial officer to form a reasonable belief that an offense has been committed and that seizable property would be found in a particular place."[9] "[A] finding of probable cause 'will not be invalidated by a hypertechnical, rather than a common sense, interpretation of a warrant affidavit.'"[10]

To successfully challenge the validity of a search warrant, a defendant must prove by a preponderance of the evidence that the search was unlawful.[11] Any evidence obtained from an illegal search or seizure must be excluded from trial.[12]

### B.    *General and overbroad warrants*

Both the United States Constitution and the Delaware Constitution require a warrant to "be supported by probable cause and describe the places and things to be searched *with particularity.*"[13] "To pass constitutional muster, the warrant itself must describe the things to be seized and the places to be searched with particularity such that 'nothing is left to the discretion of the officer executing the warrant.'"[14] A warrant that fails to satisfy the particularity requirement is unconstitutional.[15]

---

[9] *Sisson*, 883 A.2d at 876 (internal quotation marks and citation omitted).
[10] *Id.* (citation omitted).
[11] *State v. Chaffier*, 2023 WL 1872284, at *2 (Del. Super. Jan. 17, 2023); *Cannon*, 2007 WL 1849022, at *2 (citations omitted).
[12] *Jones v. State*, 745 A.2d 856, 872-73 (Del. 1999).
[13] *Terreros v. State*, 312 A.3d 651, 661 (Del. 2024) (emphasis in original).
[14] *Id*. at 662
[15] *Id*.

These types of warrants fall into two categories: general and overbroad. A general warrant "allows law enforcement to conduct an indiscriminate search."[16] An overbroad warrant "explicitly allows investigators to search places and things when no probable cause exists to search them."[17] The fruits of a general warrant must be suppressed in the entirety, but an overbroad warrant can be limited to the portions of the warrant for which probable cause exists, with the remainder being suppressed.[18] "These principles do not change or disappear when the 'place' to be searched or 'evidence to be seized' is digital in nature."[19] "Given the 'substantial' risk that 'warrants for digital and electronic devices [may] take on the character of 'general warrant,' this reality necessitates heightened vigilance, at the outset, on the part of judicial officers to guard against unjustified invasions of privacy."[20]

While there are no "rigid rules," the requirement that a warrant specify, with as much particularity as possible, the things to be searched also applies to temporal limitations. Where relevant dates are available, the warrant should be appropriately narrowed "to mitigate the potential for unconstitutional exploratory rummaging."[21]

---

[16] *Id.* at 663.
[17] *Id.*
[18] *Id.*
[19] *Id.*
[20] *Taylor v. State*, 260 A.3d 602, 613-14 (Del. 2021) (cleaned up).
[21] *Wheeler v. State*, 135 A.3d 282, 305 (Del. 2016).

**IV.**     *Analysis*

    **A.**     *The Vehicle Warrant*

Cresto argues that the Vehicle Warrant is invalid because it failed to "state with particularity the person or place to be search and the items sought in as much detail as possible" because it sought to search for "any cellular phone" without identifying the phone number, type of phone, the model, or color. He claims that the affidavit also failed to establish a nexus between the vehicle and the items sought because the allegation that Cresto was homeless and living in his vehicle is not sufficient to establish probable cause to search the vehicle.

The State responds that Cresto only challenges the Vehicle Warrant's authorization to search for "any cell phone" (he does not challenge the search for video/photography, the Ring cameras, or any BB gun/BBs), and because no phone was found during the search, the motion to suppress the Vehicle Warrant is moot. The State further argues that there is, in fact, a nexus between the vehicle and the items sought because Officer Cardile reviewed the video of Cresto in his car with the victim's stolen mailbox on the front seat, throwing her mail out the window as he drove, and Cresto is alleged to have used the phone to commit the crime being investigated.

The crux of Cresto's argument is that because the Vehicle Warrant did not identify the phone by make/model or the IMEI number, it impermissibly allowed

9

officers to rummage through Cresto's vehicle for "any cellular phone." The scope of a warrant, however, must be considered in the context of the place to be searched.[22] Here, the place to be searched was a vehicle, which, similar to an apartment, is a "well-defined physical space," unlike a search for contents of an electronic device.[23] Officer Cardile knew Cresto used a cellular phone to transmit the threatening text messages and video/photo to the victim. The fact that the officer did not know the exact device used does not make the warrant overbroad. A search for "any and all" of a specific thing may be necessary when additional information may not be known to officers. While Officer Cardile knew Cresto's phone number, the phone number associated with a device may not be readily apparent during a search, and it is reasonable to infer that any cellular phone found in Cresto's vehicle belonged to Cresto.[24] Thus, the Vehicle Warrant was not overbroad. In any event, no phone was seized, so there is nothing to suppress.

### B. *The Cell Phone Warrant*

Cresto makes two arguments relating to the Cell Phone Warrant: (i) there was no corroborating evidence that the cell phone found on Cresto at the time of his arrest was his phone, and (ii) the warrant is temporally overbroad because the warrant allowed officers to search Cresto's cell phone for the entirety of the period between

---

[22] *State v. Chaffier,* 2023 WL 1872284, at *4 (Del. Super. Jan. 17, 2023).
[23] *See id*.
[24] *See id.* at n.39 (collecting cases).

10

August 8, 2024 (when the first text message at issue was sent) *through* October 6, 2024. Cresto asserts that the victim complained about the text messages on specific dates, and therefore, there was no probable cause to search the phone for data on any other date. Further, "course of conduct" is defined in the statute as "3 or more separate incidents . . . in which a person directly [or] indirectly . . . by any action, method, device, or means, follows, monitors, observes, surveys, threatens, or communicates to or about another." [25] Therefore, Cresto asserts, any search beyond the separate incidents on the specific dates reported to police lacks probable cause.

The State responds that the reviewing judicial officer may draw reasonable inferences from the factual allegations in the affidavit, and it is reasonable to infer that the phone found in Cresto's possession at the time of his arrest belonged to him. The State also argues that the temporal limitations on the warrant are appropriate because stalking is a course of conduct crime, and the dates are tied to the start and end date of the alleged crime.

The affidavit in support of the warrant is to be considered "under a totality of the circumstances" and reasonable inferences may be drawn from the facts in the affidavit.[26] Here, Cresto is alleged to have used his cell phone in the commission of the crime—sending text messages, a photo, and a video to the victim. It is reasonable

---

[25] 11 *Del. C.* § 1312(e)(1).
[26] *State v. Anderson*, 2018 WL 6177176, at *2 (Del. Super. Nov. 5, 2018).

to infer that the phone found in his possession at the time of his arrest belonged to him.[27]

The temporal limitation in the warrant is moored to the facts in the affidavit. The time-period starts when Cresto's alleged stalking of the victim began and ends on the last day of the chain of events.[28] While stalking requires three separate incidents as defined in "course of conduct," the crime of stalking includes more than sending threatening text messages. The course of conduct may also include following, monitoring, or observing the alleged victim.[29] The text messages infer that Cresto was at or near the victim's house on dates that may not be tied to the date of the text messages. Further, Cresto was being investigated for theft. The location found through the phone's GPS could reasonably result in evidence of stalking and theft. It is reasonable to conclude that relevant evidence would be found through a search of the phone's GPS in the defined time-period.

Further, the phone was an instrument of the alleged crime, and thus it is reasonable for a reviewing magistrate to conclude that relevant evidence could be found through a search of the phone's text messages and phone calls within the

---

[27] *See Anderson*, 2018 WL 6177176, at *2 (finding search of seven cell phone found in defendant's possession was valid).

[28] Cresto objects to the State's attempting to use information obtained from the cell phone that is not relevant to the stalking charge, as it is irrelevant and would be prejudicial to him. While relevancy objections are preserved for trial, the State confirmed at the suppression hearing that it will not seek to introduce any evidence obtained from the cell phone that is not relevant to the crime of stalking.

[29] 11 *Del. C.* § 1312(e)(1).

defined time-period.[30]  It is also reasonable to conclude that the user account data would confirm that the phone belonged to Cresto.

Cresto relies on *State v. Waters*.[31]  There, the defendant was accused of murder, and  a warrant was issued to search the defendant's cell phone cellular site locations (data held by the telecommunications carrier) for the period beginning two days before the murder and two weeks after.[32]  The defendant moved to suppress, arguing that the warrant was general and overbroad because the warrant did not establish that the defendant possessed the phone on the date of the murder and the affidavit did not provide any justification of the time-period.

The court found that it was not a general warrant because GPS data from the defendant's phone could provide evidence of his whereabouts at the time of the murder.  But the scope of the search was problematic because "[n]o part of the affidavit articulate[d] what evidence the government believe[d] it w[ould] uncover from this expanded [time-period]."[33]

After additional briefing, the State agreed to limit the search period to the afternoon before the murder (because it was believed that the defendant was at or near the victim's residence to "case" the spot where he would later return) and 24

---

[30] *Chaffier,* 2023 WL 1872284, at *7 ("'a warrant may be issued for anything of an evidentiary nature pertaining to the commission of a crime or crimes.'" (citation omitted)).
[31] 2020 WL 507703 (Del. Super. Jan. 30, 2020).
[32] *Id.* at *4.
[33] *Id.* at *3.

hours after the murder (the "Limited Period").[34] The court granted the motion to suppress to exclude the electronic evidence outside the Limited Period but otherwise denied the motion.

Unlike in *Waters,* Cresto's cell phone was alleged to be an instrument of the crime. Further, prior to the State agreeing to the Limited Period, the warrant in *Waters* did not provide any logical basis for the dates selected for the search. Here, the temporal limitation of August 8 through October 6 logically flows from the factual recitation in the affidavit.

The Cell Phone Warrant is not overbroad. The temporal limitation was specific and appropriate. The Motion to Suppress is *DENIED*.

**IT IS SO ORDERED**.

*/s/Kathleen M. Miller*
Kathleen M. Miller, Judge

cc:     Prothonotary
        Lauren N. Brown, Esq.
        Anna Hadlock, Esq.

---

[34] *Id.* at *5.