**Brian TURNER, Defendant Below, Appellant,**

v.

**STATE of Delaware, Plaintiff Below, Appellee.**

No. 621, 2002.

Supreme Court of Delaware.

Submitted: April 8, 2003.
Decided: June 19, 2003.

James Folsom, Esquire, Wilmington, for appellant.

Timothy J. Donovan, Jr., Esquire, Department of Justice, Wilmington, for appellee.

Before VEASEY, Chief Justice, HOLLAND and BERGER, Justices.

HOLLAND, Justice.

This is the direct appeal of the defendant-appellant, Brian Turner, from a final judgment entered by the Superior Court. Turner was charged by indictment with Trafficking in Cocaine and Maintaining a Dwelling for Keeping a Controlled Substance. The trial judge, sitting without a jury, found Turner guilty of Trafficking in Cocaine. Turner was sentenced to be incarcerated for seven years at Level V, suspended after five years for probation.

Turner filed a pre-trial motion to suppress the evidence against him. Following a hearing, that motion was denied. Turner then stipulated to the facts of the case. The only issue raised by Turner on appeal is the Superior Court's ruling that denied his motion to suppress evidence.

We have concluded that Turner's contentions are without merit. Therefore, the judgment of the Superior Court is affirmed.

## Facts

On May 2, 2002, the police were called to an address on Bunche Boulevard in Dunleith to investigate a shooting. Upon arrival, the police found two homicide victims. One victim was inside the residence and one victim was outside. Witnesses told the police that three men in a gray vehicle drove up to the residence and fired a weapon, striking the two victims.

Four days later, the police applied for and received a warrant to search the Bunche Boulevard address for firearms and ammunition. According to the affidavit accompanying the warrant, the police had learned in the course of investigating the homicides that one of the victims may have been in possession of a gun at the time of the shootings. When the police arrived at the Bunche Boulevard address to execute the search warrant, one of the residents, Turner, was present.

Turner asked the police if he could put on his pants. Turner became very nervous and the police searched him. The police found cocaine in a weight sufficient to support a charge of Trafficking in Cocaine. While continuing the search, the police found a bag with more cocaine under the rear shed, as well as numerous personal documents bearing Turner's name. Turner was arrested and charged with drug offenses.

### Turner's Contentions

In this appeal, Turner argues that the warrant the police obtained to search his residence was faulty for three reasons: first, the evidence sought—a firearm or an indication that one of the murder victims owned a firearm—was not the proper object of a warrant search under Del.Code Ann. tit. 11, § 2305; second, the warrant affidavit failed to establish probable cause to search the residence; and third, the information in the affidavit was stale.

Thus, Turner is challenging only the police entry into the residence under the authority of the search warrant. Turner does not challenge the actions of the police, once on the premises, in seizing the drugs themselves. Each of Turner's challenges to the validity of the warrant will be considered *seriatim.*

### Object of the Search

Turner argues that the object of the search—a handgun reportedly seen in the possession of one of the victims at the time of the murders—was neither contraband nor evidence of a crime and, therefore, did not fall within one of the statutory categories of items for which a search warrant may be properly issued.[1] Turner's argument is contrary to subsection (5) of Section 2305. Pursuant to Section 2305(5), a warrant may issue for anything "of an evidentiary nature pertaining to the commission of a crime or crimes."

A search warrant may not issue except upon a determination of probable cause. There is no requirement, however, that the owner or possessor of the property to be seized be viewed as a suspect.[2] "The Fourth Amendment does not foreclose the issuance of a search warrant directed to a third party not 'implicated in misconduct.'"[3] "As long as the search is "reasonable" under the Fourth Amendment, the "State interest in enforcing the criminal law and recovering the evidence

---

1. Del.Code Ann. tit. 11, § 2305.

2. *Boardley v. State,* 612 A.2d 150, 154 (Del. 1992), citing *Zurcher v. Stanford Daily,* 436 U.S. 547, 98 S.Ct. 1970, 56 L.Ed.2d 525 (1978).

3. *Id.*

remains the same," whether the third party is a suspect or not." [4]

■ In this case, at the time the search warrant was issued for Turner's residence, he was an innocent third party. The requirement of probable cause in that context is directed to the relationship between the crime under investigation and the evidence sought to be seized.[5] A handgun seen in the possession of one of the victims was not, under the circumstances of the homicide investigation, the probable murder weapon.

■ Nevertheless, evidence that one of the victims had a gun was relevant to establishing the nature and degree of the homicides. The Superior Court properly ruled that the victim's weapon constituted *Brady*[6] material that the police were required, under established law, to gather and preserve for the defendants charged with the homicides.[7] Consequently, the "victim's gun" would be an item "of an evidentiary nature pertaining to the commission of a crime." [8]

### Probable Cause

■ Turner's next contention is that the warrant affidavit failed to establish probable cause to search the residence. A search warrant affidavit "must set forth facts adequate to warrant a reasonable man in the belief that an offense has been committed and that seizable property would be found in a particular place or on a particular person." [9] Turner contends that the affidavit failed to establish a reason to believe a handgun—seen in the possession of one of the murder victims—would be found in the residence identified in the warrant.

■ In this case, the affidavit established that a double homicide had been committed at the Bunche Boulevard address four days prior to the issuance of the warrant. Two victims had been shot to death by unknown assailants who arrived and fled in a gray vehicle. One of the victims died inside the residence.

During the course of their investigation into the murders, police learned that at the time of the shootings one of the victims may have been in possession of a weapon. The affidavit did not identify either the source of that information or the source's reliability. The fact that there had been a double homicide by a shooting at the residence four days before, however, provided a corroborative nexus between firearms and the residence.

The trial judge recognized that the information received by the police was unusual because it was potentially exculpatory rather than inculpatory. The trial judge determined that this fact enhanced the probability that the object sought would be found in the residence. The record supports the trial judge's determination that the affidavit was sufficient to support the issuance of a warrant to search Turner's residence for a weapon that might have been in the possession of the homicide victims, especially since one

---

4. *Id.*

5. *Id.*

6. *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

7. *See Lolly v. State,* 611 A.2d 956 (Del.1992); *Hammond v. State,* 569 A.2d 81 (Del.1989); *Hughes v. State,* 490 A.2d 1034 (Del.1985); *Deberry v. State,* 457 A.2d 744 (Del.1983).

8. Del.Code Ann. tit. 11, § 2305.

9. *Jensen v. State,* 482 A.2d 105, 110–11 (Del. 1984).

victim died within that residence.[10]

### Staleness

 Finally, Turner argues that the information in the affidavit was stale because four days had elapsed between the time of the crime and the issuance of the warrant. The object sought in the warrant was a firearm or other items indicating ownership or possession of a firearm by either of the murder victims. There is no indication on the record that the firearm, if it existed, was contraband or incriminating to anyone who lived in the residence. Consequently, there was no reason to believe that the firearm would not be at the residence four days after it was seen there.

In *Jensen,* this Court held that information provided in an affidavit to search for a revolver was not stale after twenty-seven days.[11] *A fortiori,* the trial judge properly ruled that the four-day-old information was not stale in this case. Turner's argument to the contrary is without merit.

### Conclusion

The trial judge properly applied legal principles to the facts of this case in denying Turner's challenge to the warrant search of his residence. Therefore, the judgment of the Superior Court is affirmed.

---

**10.** *Id.* at 111.

**11.** *See Jensen v. State,* 482 A.2d at 112 (where police sought, among other evidence, a revolver, a twenty-seven day delay between the crime and issuance of a warrant did not render the information in the affidavit stale).