# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE     )
)
)
**v.**     )     **ID. No. 2103001425**
)
)
JUSTIN CHAFFIER     )

Submitted: December 19, 2022
Decided: January 17, 2023
Written Opinion Issued: February 9, 2023

## MEMORANDUM OPINION AND ORDER

*Upon Defendant Justin Chaffier's Motion to Suppress*,
**DENIED**.

Jenna Milecki, Esquire, Jill Schroeder, Esquire, Deputy Attorneys General, DEPARTMENT OF JUSTICE, Wilmington, Delaware, for the State of Delaware.

Erika B. LaCon, Esquire, John S. Edinger, Esquire, Tiffany A. Anders, Esquire, Assistant Public Defenders, OFFICE OF DEFENSE SERVICES, Wilmington, Delaware, for Mr. Chaffier.

**WALLACE, J.**

## I. FACTUAL AND PROCEDURAL BACKGROUND

Justin Chaffier has been indicted for one count of first-degree murder for allegedly causing the death of Nicole Crawford and one stalking count for his conduct toward Ms. Crawford during the weeks leading up to her death.[1]

On February 26, 2021, Ms. Crawford was pronounced dead at her home in Newark, Delaware.[2] Police had been investigating Mr. Chaffier for stalking her during that month.[3] After Ms. Crawford's death, and in furtherance of the stalking investigation, police obtained and executed search warrants on Mr. Chaffier's car and apartment. They also obtained and executed an arrest warrant for Mr. Chaffier.[4] Mr. Chaffier was arrested at his Pennsylvania apartment and thereafter police began their authorized searches.[5]

When police interviewed Mr. Chaffier, he "admitted to following Nicole from her place of employment, to blocking her [R]ing camera, to looking through her windows and calling her six-year-old child to ask for Nicole's location."[6] Additionally, Mr. Chaffier told them he was in a relationship with the decedent and

---

[1] D.I. 1.

[2] Mot. to Suppress, Ex. B ("Apartment Search Warrant") ¶ 1, Sept. 16, 2022 (D.I. 25).

[3] *Id.* ¶¶ 2-3; *see* Mot. to Suppress ¶ 2.

[4] *See* Mot. to Suppress, Ex. A & Ex. B; Mot. to Suppress, Ex. D ("Cell Phone Search Warrant") ¶¶ 28-30.

[5] Cell Phone Search Warrant ¶¶ 28-30.

[6] *Id.* ¶¶ 31-32.

evidence of that relationship and his presence at her home would be found in his cell phone.[7] After that interview, police obtained additional warrants and executed searches of Mr. Chaffier's cell phone,[8] iPad, laptop, and to retrieve certain data from Google and Verizon.

Mr. Chaffier initially issued a blanket challenge to all the search warrants issued. At the suppression hearing though, Mr. Chaffier clarified he is only challenging the apartment, cell phone, laptop, Google, and Verizon warrants.

## II. PARTIES' CONTENTIONS

### A. MR. CHAFFIER'S MOTION TO SUPPRESS

Mr. Chaffier asks that the fruit of any search of his "electronic communication devices and any evidence obtained as a result of the data collected be suppressed."[9] Mr. Chaffier's prayer can be grouped thusly: (1) he seeks suppression of any materials gathered by execution of the apartment search warrant; (2) he seeks suppression of information gathered through the cell phone and laptop search

---

[7] *Id.* ¶¶ 31-34 ("Chaffier stated he was invited to the residence and the communication to verify the same was saved on his cellular phone to include photographs and messages."); *id.* ¶ 34 ("Chaffier kept stating that communication between he and Nicole was documented in his cellular device.").

[8] Notwithstanding that this device is more aptly described as a "smartphone" rather than a "cell phone," the Court herein uses the term set forth in the contested warrants and the parties' papers. *See, e.g., Taylor v. State*, 260 A.3d 602, 613 (Del. 2021) ("We use the word smartphone, as the term 'cell phone' does not describe adequately the scope and intimacy of the information contained in these devices.").

[9] Mot. to Suppress at 2.

warrants; and (3) he seeks to exclude anything obtained via the warrants issued to Google and Verizon.

Mr. Chaffier alleges the apartment search warrant was deficient because it lacked particularity, was overbroad, and failed to establish probable cause.[10] Concerning lack of particularity and overbreadth, Mr. Chaffier says the warrant "did not limit the search as far as what information could be obtained, and it permitted an exploratory rummaging through everything in the defendant's residence."[11] As for the alleged probable cause deficiency, Mr. Chaffier asserts the warrant "lack[ed] a nexus between Stalking and what evidence would be found in the defendant's apartment or more specifically in his laptop, cellphones, and other electronic communication devices."[12] And, he says, because the warrants do not include "any reference to an allegation that Mr. Chaffier used any electronic devices to stalk or harass Nicole Crawford" there was no connection between the crime and items to be seized.[13]

It follows therefore, Mr. Chaffier posits, that if the apartment search warrant is invalid, then the cell phone and laptop search warrants—in part, because those two items were discovered in the apartment and, in part, because the warrants are

---

[10] *Id.* ¶¶ 19-22.

[11] *Id.* ¶ 20.

[12] *Id.* ¶ 21.

[13] *Id.* ¶ 22.

supported by other evidence found in the apartment—are also.[14]  But if they are not invalid on that basis, then the evidence gathered from the cell phone and laptop should be suppressed because, in Mr. Chaffier's view, the warrants that authorized those searches are invalid general warrants.[15]

Last, Mr. Chaffier says that if the cell phone and laptop search warrants are invalid, then the Google and Verizon data search warrants—which he argues rely wholly on evidence found on the cell phone and laptop—fall as well.[16]

## B. THE STATE'S OPPOSITION

The State maintains the warrants are all valid.  Specifically, the State asserts the apartment search warrant was not a general warrant because it specified certain items to be searched for and seized and their connection to the alleged stalking.[17] Additionally, the State argues the cell phone and laptop search warrants were limited in both scope and duration, specific as to the area being searched, and supported by probable cause.[18]

---

[14]  *Id.* ¶ 23.

[15]  *Id.*

[16]  *Id.* ("Detective McNasby authored search warrants for Google, Wyze Surveillance, and Verizon. Those warrants should additionally be suppressed as fruits of the poisonous tree.").

[17]  Response to the Mot. to Suppress ¶¶ 14-22, Oct. 14, 2022 (D.I. 29).

[18]  *Id.* ¶¶ 23-31.  The State conceded that the March 25, 2021 laptop search warrant was a general warrant but argues the second laptop search warrant (July 13, 2021) is valid and cured any potential deficiency in the first. *Id.* ¶ 31.

## III. STANDARD OF REVIEW

On a motion to suppress contesting the validity of a search warrant, the defendant shoulders the burden of establishing that the challenged search or seizure was unlawful.[19] And it is his burden to establish by a preponderance of the evidence that he is entitled to relief on the bases he argues.[20]

Both the United States and Delaware Constitutions provide that a search warrant may be issued only upon a showing of probable cause.[21]

"It is well-settled that the Court must employ a 'four-corners' test to determine whether an application for a warrant demonstrates probable cause."[22] Under that test, a reviewing court must discern whether the supporting affidavit "set[s] forth

---

[19] *State v. Sisson*, 883 A.2d 868, 875 (Del. Super. Ct. 2005), *aff'd*, 903 A.2d 288 (Del. 2006); *cf. McAllister v. State*, 807 A.2d 1119, 1123 (Del. 2002) (State bears the burden of demonstrating the existence of an exception to the warrant requirement); *Hunter v. State*, 783 A.2d 558, 560 (Del. 2001) ("Despite some arguable earlier confusion in the Delaware case law over which party bears the burden of proof on a motion to suppress evidence seized during a *warrantless* search, the rule in Delaware should now be clear. The State bears the burden of proof." (emphasis in original) (citations omitted)).

[20] *Sisson*, 883 A.2d at 875; *see State v. Anderson*, 2010 WL 4056130, at *3 (Del. Super. Ct. Oct. 14, 2010) ("The burden of proof on a motion to suppress is proof by a preponderance of the evidence." (citation omitted)); *see also United States v. Matlock*, 415 U.S. 164, 177 n.14 (1974) ("[T]he controlling burden of proof at suppression hearings" is "by a preponderance of the evidence." (citation omitted)).

[21] *See* U.S. CONST. amd. IV ("The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."); DEL. CONST. art. I, § 6 ("The people shall be secure in their persons, houses, papers and possessions, from unreasonable searches and seizures; and no warrant to search any place, or to seize any person or thing, shall issue without describing them as particularly as may be; nor then, unless there be probable cause supported by oath or affirmation.").

[22] *Sisson*, 883 A.2d at 876 (citing *Pierson v. State*, 338 A.2d 571, 573 (Del. 1975)).

sufficient facts on its face for a judicial officer to form a reasonable belief that an offense has been committed and that seizable property would be found in a particular place."[23]  In addition to being supported by probable cause, a search warrant must "be as particular as possible."[24]  Specifically, "[t]he warrant must describe the things to be searched with sufficient particularity and be no broader than the probable cause on which it is based."[25]

The judicial officer who made the initial finding of probable cause is owed great deference, and such a finding won't be "invalidated by a hypertechnical, rather than a common sense, interpretation" of the supporting affidavit.[26]  And, the reviewing court must view the application "as a whole and not on the basis of its separate allegations."[27]

A supporting affidavit must "set forth sufficient facts to warrant a reasonable [person] in concluding that a crime has been committed and that the property sought to be seized would be found in a particular place."[28]  To establish probable cause, "a

---

[23]  *Id.* (internal quotations and citations omitted).

[24]  *Taylor*, 260 A.3d at 613.

[25]  *Wheeler v. State*, 135 A.3d 282, 299 (Del. 2016) (citation omitted); *see Taylor*, 260 A.3d at 616 (rejecting warrant as not sufficiently limited because it "authorized a search of 'any and all data' on the smartphones[,]" instead of "limit[ing it] to smartphone data tied specifically to the probable cause supporting the warrant").

[26]  *Cooper v. State*, 228 A.3d 399, 404 (Del. 2020) (quoting *Jensen v. State,* 482 A.2d 105, 111 (Del. 1984)).

[27]  *Jensen,* 482 A.2d at 111 (citations omitted).

[28]  *Blount v. State*, 511 A.2d 1030, 1032-33 (Del. 1986) (citation omitted).

nexus [must appear] between the items . . . sought and th[at] place to be searched."[29] And in the end, a valid search warrant must be particular, specifically identifying "the place to be searched, and the persons or things to be seized."[30] The particularity requirement prevents the issuance of general warrants that may be overly intrusive and not narrowly tailored enough to their justifications.[31]

## IV. DISCUSSION

Mr. Chaffier makes a four-corners challenge to the apartment, cell phone, laptop, Google, and Verizon warrants asserting that one, the other, or each either lacks sufficient supporting probable cause or is a general warrant (or dependent on the fruit of a general warrant) and thus the evidence obtained therefrom must be suppressed.[32] For the reasons stated below the Court finds: *first*, the apartment search warrant is valid; *second*, the warrants authorizing the search of the cell phone and laptop are valid; and *lastly*, the Google and Verizon warrants are valid. Accordingly, the evidence gathered via execution of those warrants will not be suppressed.

### A. THE APARTMENT SEARCH WARRANT IS VALID.

The apartment search warrant sought "[p]hotographs/video of interior/exterior

---

[29]    *Hooks v. State*, 416 A.2d 189, 203 (Del. 1980) (citations omitted).

[30]    *Wheeler*, 135 A.3d at 295-96 (quoting U.S. CONST. amd. IV).

[31]    *Id*. at 299.

[32]    Mot. to Suppress ¶¶ 19-29.

of the property to be searched, any and all electronic communication devices to include cellular phones and computers, any and all property belonging to the victim, any and all documentation or evidence of the motive, planning, commission, flight, conspiracy of a crime."[33]

Mr. Chaffier asserts the "any and all" language in the warrant "permitted an exploratory rummaging through everything" in his apartment constituting a general warrant.[34] Citing to *Buckham v. State*,[35] Mr. Chaffier asserts the warrant is invalid and the evidence seized should be suppressed.[36] In *Buckham*, the Supreme Court found issue with "overbroad and insufficiently particular warrants" for electronic devices because of the "unprecedented volume of private information"[37] stored on those devices which "permit the government access to 'far more than the most exhaustive search of a house.'"[38]

Mr. Chaffier seems to suggest that since *Buckham* "any and all" has somehow become a banned phrase in Delaware search warrants. It has not. As with most questions of word usage, context is key. The phrase "any and all"—depending on what it is describing—is not only permissible, but sometimes necessary in a warrant.

---

[33] Apartment Search Warrant at 1.

[34] Mot. to Suppress ¶ 20.

[35] 185 A.3d 1 (Del. 2018).

[36] Mot. to Suppress ¶ 20.

[37] 185 A.3d at 18 (citing *Wheeler v. State*, 135 A.3d 282, 299 (Del. 2016)).

[38] *Id.* (quoting *Wheeler*, 135 A.3d at 299).

The difference in the type of "place" to be searched and the "items" to be seized in *Buckham* (and like cases) and those here makes the point.

The contested search warrant here is not for electronic data, instead it is for property within an apartment. That is, there is a well-defined physical space to be searched in which "any and all" of certain specified physical items may be sought out and seized. And, the warrant specifically lists what may be looked for and seized—electronic communication devices,[39] property of the victim (Ms. Crawford), and evidence of "motive, planning, commission, flight, conspiracy of a crime."[40] There is no undue generality or overbreadth here.

Mr. Chaffier points out that the face of this warrant, in one section, contains the term "a crime" instead of specifying the crime of stalking. An "affidavit supporting [a] search warrant must be 'considered as a whole and not on the basis of

---

[39] At bottom, the police were looking for electronic files or digital evidence that could have been on any of Mr. Chaffier's devices. As is most often the case, it is impossible to know with exactitude what devices might be found at a suspect's abode. *See United States v. Giberson,* 527 F.3d 882, 886-87 (9th Cir. 2008) (holding that a warrant describing particular documents authorizes the seizure of a computer, where the searching agents reasonably believe that documents specified in the warrant would be found stored in the computer); *United States v. Lacy,* 119 F.3d 742, 746 (9th Cir. 1997) (holding "when a more precise description is not possible" a blanket seizure is allowed (quoting *United States v. Cardwell*, 680 F.2d 75, 78 (9th Cir. 1982)). And it is equally impractical to do an on-site examination once they are found to exclude their evidentiary value. *See United States v. Stabile*, 633 F.3d 219, 234 (3d Cir. 2011) ("the practical realities of computer investigations preclude on-site searches. For example, a hard drive search requires a 'controlled environment.' Computer searches are also time consuming and require trained forensic investigators. In short, such on-site searches would be 'fraught with difficulty and risk' and cannot be rushed by a cursory on-site search. All these reasons suggest that the seizure of the six entire hard drives was reasonable." (citations omitted)).

[40] Apartment Search Warrant at 1.

-10-

separate allegations.'"[41] Moreover, reviewing courts have "eschewed a hypertechnical approach to the evaluation of [a] search warrant affidavit in favor of a common-sense interpretation."[42] And here the very same page containing the challenged wording specifies the crime being alleged and investigated as "Stalking."[43] The insertion of "a crime" instead of "the crime of stalking" is the type of hypertechnicality that will not invalidate a warrant.[44]

Next, Mr. Chaffier argues there is no nexus between the crime alleged (stalking) and the items sought.[45] Specifically "absent from the search warrant is any reference to an allegation that Mr. Chaffier used any electronic devices to stalk or harass Nicole Crawford."[46] But, a witness to a February 20, 2021 incident between Mr. Chaffier and Ms. Crawford told police that Mr. Chaffier "walked back and forth across the property line looking in various doors and windows and remained outside the home for several hours" and that the witness "observed

---

[41] *Dorsey v. State*, 761 A.2d 807, 811 (Del. 2000) (quoting *Gardner v. State*, 567 A.2d 404, 409 (Del. 1989) (quoting *Jensen*, 482 A.2d at 111).

[42] *Id.* (citations omitted).

[43] Apartment Search Warrant at 1.

[44] *See Smith v. State*, 887 A.2d 470, 473 (Del. 2005) ("We review a probable cause determination in the issuance of a search warrant with great deference, considering it as a whole and 'not on the basis of a hypertechnical analysis of its separate allegations.'") (quoting *Blount*, 511 A.2d at 1034); *Sisson v. State*, 903 A.2d 288, 297 (Del. 2006); *State v. Dunning*, 2019 WL 77145, at *4-6 (Del. Super. Ct. Jan. 2, 2019).

[45] Mot. to Suppress ¶ 21.

[46] *Id.* ¶ 22.

[Mr. Chaffier] to be using a cell phone during the incident."[47] Additionally, police spoke to another witness who stated Mr. Chaffier "continued to contact [Ms. Crawford] and show up to her residence unannounced" after the relationship ended.[48] This included calling Ms. Crawford from "blocked numbers."[49] Last, police spoke to members of Ms. Crawford's family and friends who "reported receiving suspicious messages, friend requests and phone calls from [Mr. Chaffier] inquiring about [Ms. Crawford]."[50]

No doubt the warrant's averments well-support a fair probability that Mr. Chaffier's cell phone, laptop, and other electronic devices were the instruments of his alleged stalking. And common sense dictates that those types of items are likely to be found at one's residence. So there is a nexus between the items to be found in the apartment and the crime being investigated—stalking.

Here, the affidavit of probable cause sufficiently detailed Mr. Chaffier's conduct and the related circumstances such that a reasonable person would conclude that the crime of stalking had been committed and that relevant evidence would be found in his apartment.

---

[47] Apartment Search Warrant ¶ 2.

[48] *Id.* ¶ 6.

[49] *Id.* ("Witness 4 stated that Nicole had blocked Justin on her phone and social media however he continued to call her from blocked numbers.").

[50] *Id.* ¶ 15; *see also id.* ¶ ("During this investigation your affiant was contacted my [sic] Nicole's family members who advised that Justin had also been calling Nicole's six-year-old son asking for his mother prior to her being deceased.").

Accordingly, the apartment search warrant is valid.

## B. THE CELL PHONE AND LAPTOP SEARCH WARRANTS ARE VALID.

Police obtained a separate warrant to search Mr. Chaffier's phone. That search warrant sought:

> Photographs of the blue Samsung Galaxy S10E cell phone taken by New Castle County Police personnel that was possessed by Justin Chaffier (WMN 05-11-1986); any and all incoming and outgoing phone calls made from this phone or any applications on this phone; any and all incoming and outgoing video phone calls or any applications with the ability to make incoming and outgoing video phone calls; any and all incoming and outgoing text messages or drafts of text messages; any and all incoming and outgoing data or records for any other form of communication found on this phone to include but not limited to social media applications; any and all GPS coordinates which may be associated with applications or content; any and all incoming and outgoing multi-media messages or drafts of multi-media messages; any and all internet history,  searches, or stored data photographs and videos, internet searches, and WIFI connections; any and all call logs or contacts, any and all device identification data found on this phone collected from Justin Chaffier's residence related to the cellular phone identified above on the following dates January 22, 2021 at 0000(EST) through March 4, 2021 at 1100(EST); any and all documents or evidence pertaining to the planning and motive for the crime of Stalking Delaware Title 11/1312 F/G . . . .[51]

Police also obtained a separate warrant to search Mr. Chaffier's laptop. That search warrant sought:

> Photographs of the black Lenovo laptop taken by New Castle County Police personnel that was possessed by Justin Chaffier (WMN 05-11-1986); a forensic examination for the digital contents and all attached storage devices of the black Lenovo laptop, specifically for address book & contact list, videos, pictures, internet and search history, emails,

---

[51]   Cell Phone Search Warrant at 1 (underlining and bolding omitted).

SMS (text) messages, MMS (Media) messages, chats, incoming and outgoing data or records for any other form of communication found on this laptop to include but not limited to social media applications, any and all device identification data found on this laptop computer that was collected from Justin Chaffier's residence, during the dates of January 22, 2021 at 0000(EST) through March 4, 2021 at 1100(EST); any and all digital documents or evidence pertaining to the planning and motive for the crime of Stalking Delaware Title 11/1312 F/G. . . .[52]

First, Mr. Chaffier suggests there is no connection between the cell phone or laptop and the crime of stalking.[53] Not so. The natural read of the entirety of the warrants and their supporting affidavits demonstrates a fair probability that both the phone and computer were not only instruments of Mr. Chaffier's alleged stalking conduct but otherwise contained material "of an evidentiary nature pertaining to the commission of a crime or crimes."[54]

After police arrested Mr. Chaffier and before police obtained the cell phone and laptop search warrants, Mr. Chaffier "advised that he communicated with [Ms. Crawford] through text messages, phone calls and social media."[55]  This

---

[52]  Mot. to Suppress, Ex. F at 1 ("Second Laptop Search Warrant").  The State has conceded the first laptop search warrant (March 25, 2021) is a general warrant and does not intend to use any of the evidence obtained from the execution of that warrant in its case.  Response to the Mot. to Suppress ¶ 31.

[53]  Mot. to Suppress ¶ 26 (the warrants "lack[] a nexus between Stalking and what evidence would be found by searching the defendant's laptops and cellphones").

[54]  *Turner v. State*, 826 A.2d 289, 291 (Del. 2003) (quoting DEL. CODE ANN. tit 11, § 2305(5)).

[55]  Cell Phone Search Warrant ¶ 33.  The second laptop search warrant's affidavit of probable cause contains the same averments as the cell phone search warrant's affidavit of probable cause makes.  *See* Second Laptop Search Warrant ¶ 33.

-14-

included FaceTiming and calling the decedent's six-year-old son.[56] And in defense to officers' questioning concerning stalking, Mr. Chaffier asserted "that communication between he and [Ms. Crawford] was documented in his cellular device."[57]

Additionally, Mr. Chaffier told police that he was at Ms. Crawford's residence hours before she was found slain but told officers he had left her residence and received texts from Ms. Crawford "throughout the night, pictures, confirmation for their [upcoming] trip, and apology messages . . . ."[58] So Mr. Chaffier, himself, directly connects the dots between the devices and the alleged crime of stalking. It is Mr. Chaffier who told investigators that relevant evidence could be found in his electronic devices.

Here, police were seeking evidence not just of criminal activity, but to confirm information provided by Mr. Chaffier. Contrary to his contention, "a warrant may be issued for anything of an evidentiary nature pertaining to the commission of a crime or crimes."[59] The information collected from Mr. Chaffier's electronic devices would confirm or refute what he and others said of his contact with Ms. Crawford.

---

[56] Cell Phone Search Warrant ¶ 33.

[57] *Id.* ¶ 34.

[58] *Id.* ¶ 35.

[59] *Turner*, 826 A.2d at 291 (cleaned up).

Mr. Chaffier further challenges that the temporal limit—six weeks between January 22, 2021, and March 4, 2021—is unconstitutionally broad as it includes a short span after Ms. Crawford died.[60]  And, he says, the search warrants are unconstitutionally broad because they seek *all* messages, photographs, and data.[61]

Yet again, Mr. Chaffier's return to *Buckham*—which too involved a phone search with a six-week parameter—is misplaced; notably because of the crimes alleged.  While Mr. Chaffier—like the *Buckham* defendant—was suspected of murder, he was also being investigated separately for stalking Ms. Crawford before the killing.  That was clearly expressed in the warrant applications, as was the connection of the items sought to that separate crime and its investigation.

In *Buckham*, "many of the allegations in the warrant application [we]re too vague and too general to connect [the] cell phone to the shooting."[62]  Not so here. The devices are the self-admitted instruments of (or contained evidence refuting) Mr. Chaffier's alleged stalking, so their content is valuable and directly relevant to the investigation.

And the temporal limit is equally directly relevant to the investigation.  While

---

[60]   Mot. to Suppress ¶¶ 24-25; *id.* ¶ 29 ("Ms. Crawford was deceased on February 26, 2021, yet police sought to investigate Mr. Chaffier for stalking for another two weeks. Without showing some connection between the devices and the crime of Stalking, there can be no probable cause to believe anything that is being sought would be found within the devices.").

[61]   *Id.* ¶¶ 24-25.

[62]   185 A.3d at 17.

Mr. Chaffier asserts that the stalking activity itself could not have occurred after Ms. Crawford's demise, Mr. Chaffier claimed to officers that he didn't learn of Ms. Crawford's death until March 3, 2021, when he heard the news from one of her former colleagues.[63] So Mr. Chaffier's own recounting makes the temporal parameters appropriate and specific. Moreover, it is reasonable to conclude Mr. Chaffier could have discussed his alleged crime or taken steps—digital and other—to cover up that crime after Ms. Crawford had been killed.

Again, a neutral and detached magistrate may draw reasonable inferences from the factual allegations in the affidavit.[64] The warrants' applications plainly draw out that the devices were instruments of Mr. Chaffier's alleged stalking.[65] And given the nature of the crime of stalking in general and the specific allegations here, obtaining evidence of Mr. Chaffier's contacts with, communication with and about, and his proximity to Ms. Crawford for the short span requested were relevant to establishing, among other things: the nature of Mr. Chaffier and Ms. Crawford's relationship; and, any actions Mr. Chaffier may have taken to cover up his misdeeds.

This is far from *Buckham* where the Court found the mere generalized notion

---

[63] Cell Phone Warrant ¶ 31 ("Chaffier advised that on 03-03-2021 he learned through a colleague of Nicole's, that she died.").

[64] *Sisson*, 903 A.2d at 296 (citations omitted); *see also United States v. Grimmett*, 439 F.3d 1263, 1270 (10th Cir. 2006) ("The issuing judge is entitled to go beyond the averred facts and draw upon common sense in making reasonable inferences from those facts." (citation omitted)).

[65] Cell Phone Warrant ¶¶ 31-36.

that "criminals often communicate through cellular phones" an improper ground to support a finding of probable cause.[66] Here, the affidavit of probable cause sufficiently details the surrounding events of Mr. Chaffier's conduct such that a reasonable person would conclude that a crime had been committed and that relevant evidence would be found on his cell phone and laptop.

Mr. Chaffier also complains that the cell phone and laptop search warrants lacked particularity.[67] But the search warrants themselves are specific as to what is being searched and are distinguishable from *Buckham* and its progeny.[68] Specifically, where "any and all" is used, that language is limited by a specific "area" of the device to be searched.[69] And the single use of "included but not limited to" in each warrant permits a search beyond just "social media applications."[70] It is not the broad "including but not limited to" description listing a dozen or so entries that

---

[66] 185 A.3d at 17 (citation omitted).

[67] Mot. to Suppress ¶ 25.

[68] *E.g., Taylor*, 260 A.3d at 615 ("the Taylor warrant authorized 'a top-to-bottom search' of '[a]ny and all store[d] data' of the digital contents of the devices. . . . [T]he Taylor warrant used the open-ended language 'including but not limited to' to describe the places to be searched. The Taylor search warrant allowed investigators to conduct an unconstitutional rummaging through all of the contents of Taylor's smartphones to find whatever they decided might be of interest to their investigation." (alteration in original) (internal citations omitted)).

[69] *Id.* at 615-16. *See, e.g.*, Cell Phone Search Warrant at 1 ("*any and all* incoming and outgoing phone calls made from this phone or any applications on this phone; *any and all* incoming and outgoing video phone calls or any applications with the ability to make incoming and outgoing video phone calls . . . ." (emphasis added));

[70] Cell Phone Search Warrant at 1 ("include but not limited to social media applications"); Second Laptop Search Warrant at 1 ("include but not limited to social media applications").

-18-

our Supreme Court found problematic in *Taylor v. State*.[71]

Accordingly, the cell phone and laptop search warrants are valid.

## C. THE GOOGLE AND VERIZON WARRANTS ARE VALID.

Mr. Chaffier summarily maintains that the evidence obtained from Google and Verizon should be suppressed as fruit of the poisonous tree, because the warrants issued to those entities, in his view, impermissibly relied on fruit of other invalid searches.[72]

As the State conceded, the first laptop search warrant (March 25, 2021) could be considered a general warrant.[73] But the Verizon warrant was drafted and executed before the first flawed laptop search warrant was drafted and executed. So, the materials obtained from Verizon could in no way be deemed the fruit of that later search.[74] What's more, as explained above, the cell phone search warrant was valid. So any information or material Verizon provided via the warrant issued on it is not the fruit of any poisonous tree.

The Google Search Warrant is not as simple. That warrant was drafted after

---

[71] *Taylor*, 260 A.3d at 615; *see Wheeler*, 135 A.3d at 289 (finding invalid a warrant that listed the areas of the phone to be searched "to include but not limited to: registry entries, pictures, images, temporary internet files, internet history files, chat logs, writings, passwords, user names, buddy names, screen names, email, connection logs, or other evidence.").

[72] Mot. to Suppress ¶ 23 ("Detective McNasby authored search warrants for Google, Wyze Surveillance, and Verizon. Those warrants should additionally be suppressed as fruits of the poisonous tree.").

[73] Response to Mot. to Dismiss ¶ 31.

[74] *See* Mot. to Suppress, Ex. C, Verizon Search Warrant.

the first laptop search warrant was executed and references, in a single paragraph, a product of that search.[75] But excising[76] that single paragraph leaves intact a search warrant that relies on the evidence gathered from the cell phone and other warrants the Court, above, found to be valid.[77] Accordingly, the Google and Verizon search warrants are valid.

---

[75] Mot. to Suppress, Ex. C, Google Search Warrant ¶ 64 ("Your affiant is aware that a search warrant was also authored for the black Lenovo laptop that was collected from Chaffier's apartment. Your affiant reviewed the extraction report and observed multiple images for crime scene investigative books, hydrochloric acid and chicken wire. It should be noted that these images appeared to be photographs captured from the internet. It is possible that these photographs could correlate with various internet searches conducted on electronic devices by Chaffier. Your affiant is aware that if there are images associated with an internet search or activity it will generate an image that will then be stored in the image section of the device or electronic.").

[76] *Franks v. State*, 398 A.2d 783, 785 (Del. 1979) ("Excised of the alleged false paragraphs the warrant affidavit contains sufficient uncontested allegations to establish probable cause . . . ."); *see also State v. Grossberg*, 1998 WL 283491, at *4 (Del. Super. Ct. Mar. 18, 1998) (finding excised search warrant affidavit established probable cause).

[77] *See, e.g.*, Mot. to Suppress, Ex. C, Google Search Warrant ¶ 35 ("On 03-23-2021 your affiant received the extraction report back from Justin Chaffier's cellular phone after a search warrant was executed on same. While reviewing the extraction report your affiant located images, videos and weblinks for Nicole Crawford's Ring camera stored in Justin's cellular phone. Justin further utilized email to send the Ring links to his email account. Your affiant reviewed the Ring links which contained video of NCCPD investigators to include your affiant conducting the initial investigation at Nicole's residence on 2-26-2021. Justin further had photographs of Nicole's bank card and personal information to include her work schedule and various usernames and passwords of Nicole's. Justin further had personal information stored in his device for another male Nicole was seeing to include the male's phone number and occupation."); *id.* ¶ 50 ("Your affiant observed an email sent from jmchaffier@gmail.com to jmchaffier@gmail.com. The email contained a Ring web link. Your affiant reviewed the weblink and observed the video to be from the Ring camera that was attached to Nicole Crawford's residence. The video from Chaffier's email captured your affiant and Detective Sergeant Melvin exiting Nicole's front door on 2-26-2021 when we were on scene investigating her death. Nicole's mother and several marked NCCPD patrol vehicles were captured on the video as well. The date listed on the email stated 2-27-2021.").

## V.  CONCLUSION

Each challenged warrant application, viewed as a whole, provided an ample factual basis upon which a neutral judicial officer could find a fair probability that evidence pertaining to the stalking investigation would be found in the given "place."  Moreover, each warrant was sufficiently limited in spatial, material, and temporal scope as to avoid being unconstitutionally general.

Because Mr. Chaffier's motion to suppress challenges the validity of certain search warrants, and because the Court has found each such warrant to be valid, Mr. Chaffier's motion to suppress or exclude the evidence gathered via them is **DENIED**.

**IT IS SO ORDERED.**

_____
Paul R. Wallace, Judge