# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE,      )
     )
     )
**v.**      )      **ID. No. 2203012514**
     )
     )
BRANDON HOLMES      )

Submitted: April 10, 2023
Decided: June 13, 2023

## MEMORANDUM OPINION AND ORDER

*Upon Defendant Brandon Holmes' Motion to Suppress*,
**DENIED**.

Daniel B. McBride, Esquire, Deputy Attorney General, DEPARTMENT OF JUSTICE, Wilmington, Delaware, for the State of Delaware.

Robert M. Gamburg, Esquire, GAMBURG & BENEDETTO LLC, Philadelphia, Pennsylvania, and Brian J. Chapman, Esquire, LAW OFFICE OF BRIAN J. CHAPMAN, Newark, Delaware, for Mr. Holmes.

**WALLACE, J.**

## I. FACTUAL AND PROCEDURAL BACKGROUND

On March 11 and March 21, 2022, respectively, Delaware State Police executed search warrants on and found drugs and firearms in an apartment and a storage unit. Defendant Brandon Holmes purportedly leased both. As such, the State has charged Mr. Holmes with drug dealing, weapons possession, and other offenses.

Mr. Holmes, in response, has moved to suppress the evidence gathered during the two searches. He says that the affidavit supporting each warrant lacks sufficient probable cause.

Before the Court heard arguments on the motion, the Court asked the parties to submit supplemental briefing on whether Mr. Holmes had standing to challenge the searches.[1] The State has conceded that he does.[2] Thereafter, the Court held a hearing on the motion.

Mr. Holmes has asserted a four-corners challenge and attempted to invoke *Franks v. Delaware* to attack the warrants.[3] The Court disposed of the *Franks* issue at the hearing and took the four-corners challenge under advisement.[4]

---

[1]  D.I. 19.

[2]  D.I. 24.

[3]  March 16, 2023 Suppression Hr'g at 4-5 (D.I. 23).

[4]  *Id.* at 23, 55-56.

## II.  PARTIES' CONTENTIONS

### A. MR. HOLMES' MOTION TO SUPPRESS

Mr. Holmes makes a four-corners challenge to the two warrants asserting: (1) the probable cause finding in each was based on an unconstitutional canine sniff, and (2) there were insufficient factual and logical connections in either's supporting affidavit to allow a judicial finding of probable cause.[5]

### B. THE STATE'S OPPOSITION

The State opposes the motion and argues the warrants were supported by sufficient facts establishing probable cause.[6]

## III.  STANDARD OF REVIEW

On a motion to suppress contesting the validity of a search warrant, the defendant shoulders the burden of establishing that the challenged search or seizure was unlawful.[7]  Our Federal and State Constitutions provide that a search warrant may be issued only upon a showing of probable cause.[8]

---

[5]   Mot. to Suppress ¶¶ 47-88 (D.I. 17).  Mr. Holmes also asserted a *Franks* challenge, which the Court denied at the Suppression Hearing.  March 16, 2023 Suppression Hr'g at 23, 55-56.

[6]   State's Response ¶¶ 6-30 (D.I. 18).

[7]   *State v. Sisson*, 883 A.2d 868, 875 (Del. Super. Ct. 2005) (citations omitted).

[8]   *See* U.S. CONST. amd. IV ("The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."); DEL. CONST. art. I, § 6 ("The people shall be secure in their persons, houses, papers and possessions, from unreasonable searches and seizures; and no warrant to search any place, or to

"It is well-settled that the Court must employ a 'four-corners' test to determine whether an application for a warrant demonstrates probable cause."[9] Under that test, a reviewing court must discern whether the supporting affidavit "set[s] forth sufficient facts on its face for a judicial officer to form a reasonable belief that an offense has been committed and that seizable property would be found in a particular place."[10]

The judicial officer who made the initial finding of probable cause is owed great deference, and such a finding won't be "invalidated by a hypertechnical, rather than a common sense, interpretation" of the affidavit.[11] And the reviewing court must view the application "as a whole and not on the basis of its separate allegations."[12]

---

seize any person or thing, shall issue without describing them as particularly as may be; nor then, unless there be probable cause supported by oath or affirmation.").

[9] *Sisson*, 883 A.2d at 876 (citing *Pierson v. State,* 338 A.2d 571, 573 (Del. 1975)).

[10] *Id.* (internal quotation marks and citation omitted); *Blount v. State*, 511 A.2d 1030, 1032-33 (Del. 1986) (stating the supporting affidavit must "set forth sufficient facts to warrant a reasonable man in concluding that a crime has been committed and that the property sought to be seized would be found in a particular place" (citations omitted)).

[11] *Cooper v. State*, 228 A.3d 399, 404 (Del. 2020) (quoting *Jensen v. State,* 482 A.2d 105, 111 (Del. 1984)).

[12] *Jensen*, 482 A.2d at 111 (citations omitted).

# IV. DISCUSSION

## A. THE APARTMENT SEARCH WARRANT AFFIDAVIT CONTAINS SUFFICIENT FACTS FOR A JUDICIAL OFFICER TO FIND A FAIR PROBABILITY THAT AN OFFENSE HAD BEEN COMMITTED AND THAT EVIDENCE THEREOF WOULD BE FOUND THEREIN.

In support of the first search, the affiant-police officer asserted that in November 2021, an informant reported that a Lamar Hammond was running a large-scale drug operation in Delaware.[13] Responding to this information, police obtained a court-ordered GPS tracker for Mr. Hammond's car—a black Ford Taurus.[14] While monitoring the GPS data, officers observed that Mr. Hammond frequently visited the Brandywine Hundreds Apartment Complex, a three-building apartment complex located at 400-402 Foulk Road in New Castle County, Delaware.[15] Because police observed Mr. Hammond's frequent presence at the apartment complex, and police observed Mr. Hammond sell drugs during the course of their investigation, police believed there was a stash (or supply) location in the complex.[16] Relatedly, in March 2022, police executed a search warrant at 701 West 31st Street in the City of

---

[13] D.I. 18, Ex. A ("Apartment Search Warrant Affidavit") ¶ 3.

[14] *Id.* ¶ 5.

[15] *Id.* ¶ 6.

[16] *Id.* ("It was found that Hammond responds to the apartment complex on a regular basis. This information in conjunction with observing Hammond conduct drug transactions throughout the investigation led Your Affiant to believe this to be a 'stash' location for Hammond's supply of narcotics.").

Wilmington.[17] That search resulted in a large quantity of drugs, purportedly owned by Mr. Hammond, being seized by police.[18] Based on this search, and his frequenting of the Brandywine Hundreds Apartment Complex, police believed there was a "specific apartment" there in which Mr. Hammond kept more drugs.[19]

While conducting further surveillance, police "obtained [information] that a large-scale source of [drug] supply known to be Brandon Holmes . . . utilizes a third-floor apartment within the complex."[20] Police reviewed the complex's security footage when Mr. Hammond's GPS placed him at the complex.[21] On that day, police observed a black Dodge pickup travelling away from Building 402.[22] Police confirmed that Mr. Holmes[23] drives a black Dodge pickup and deduced that he was the potential drug supplier for Mr. Hammond.[24]

Via subpoena, police obtained the list of Building 402's tenants from the

---

[17] *Id.* ¶ 7.

[18] *Id.* ¶ 8.

[19] *Id.*

[20] *Id.* ¶ 9.

[21] *Id.*

[22] *Id.*

[23] The affidavit does not make clear how police became aware of Mr. Holmes' connection to the Brandywine Hundreds Apartment Complex and to Mr. Hammond. In a conclusory fashion, the affidavit states only that: "Information was obtained that a large-scale source of supply known to be Brandon Holmes . . . utilizes a third-floor apartment within the complex." *Id.*

[24] *Id.* ¶¶ 9-10.

apartment complex staff.[25]  The staff told police that Unit 402-3C6 was rented by an "Alyssa Theinert" who asked few questions when renting out the apartment, expedited the leasing process, and hadn't been seen on the property since.[26]  Due to the officers' knowledge that stash locations are often rented by male drug dealers in the names of women, and the manner in which Ms. Theinert rented the apartment, the officers figured Apartment 402-3C6 was the stash location.[27]

After identifying the apartment, police deployed a canine to conduct "a narcotics scan of the apartment" from the common hallway that yielded a positive alert for drugs in 402-3C6.[28]

Thereafter police obtained the search warrant at issue here.

**1. THE CANINE SNIFF DID NOT CONSTITUTE A FOURTH AMENDMENT SEARCH.**

Mr. Holmes asserts "the use of the drug dog violated the Fourth Amendment of the Constitution of the United States and Article I, Section 6 of the Constitution of the State of Delaware."[29]  While Mr. Holmes presents an argument for why he thinks the canine sniff violated the Fourth Amendment, he does nothing to support his statement that his Article I, Section 6 rights were violated beyond stating that

---

[25]  *Id.* ¶ 12.

[26]  *Id.*

[27]  *See id.*

[28]  *Id.* ¶ 13.

[29]  Mot. to Suppress ¶ 62.

those rights are "broader" than his Fourth Amendment rights.[30] He presents no discussion or analysis of the textual language, legislative history, preexisting state law, structural differences, matters of particular state interest or local concern, state traditions, or public attitudes suggesting that a reading of Article I, § 6 would cause some different treatment of a drug canine sniff than its federal analogue.[31] Mr. Holmes, instead, simply alludes that a right under the Delaware Constitution was violated, which "without more, is a conclusory assertion that the Court cannot recognize as a reasoned argument for application of a different standard under our state constitution."[32]

Accordingly, the Court analyzes and resolves only Mr. Holmes' arguments under the Fourth Amendment, and not Article I, Section 6.

In support of his Fourth Amendment argument, Mr. Holmes relies heavily on a three-justice concurrence in *Florida v. Jardines*,[33] where Justice Kagan compared

---

[30] *Id.* ¶ 78 ("For the same reasons [explained under the Fourth Amendment analysis], the drug-dog search violated Article I, Section 6 of the Constitution of the State of Delaware." (citing *Jones v. State*, 745 A.2d 856, 866 (Del. 1999)); *see id.* ("If this Court had any doubt about whether to adopt our argument as a matter of federal constitutional principles, the greater protections available under our [state] Constitution justify its adoption.").

[31] *See State v. Kwalalon*, 2015 WL 721255, at *2 (Del. Super. Ct. Feb. 13, 2015) (quoting *Ortiz v. State*, 869 A.2d 285, 291 n.4 (Del. 2008) (setting forth the factors that must be addressed to properly raise a claim that some greater specific protection is afforded in a certain area by the Delaware Constitution), *overruled on other grounds by Rauf v. State*, 145 A.3d 430 (Del. 2016)).

[32] *Id.* (citing *Stafford v. State*, 59 A.3d 1223, 1231-32 (Del. 2012) and *Wallace v. State*, 956 A.2d 630, 637-38 (Del. 2008)).

[33] 569 U.S. 1 (2013).

-8-

police canines to thermal-imaging devices—the use of the latter requiring a warrant.[34]

Mr. Holmes argues that suggestion from the *Jardines* concurrence has been applied by the Seventh Circuit and that the Court here should adopt it as well.[35] In *United States v. Whitaker*, the Seventh Circuit found "dog sniffs at doors in closed apartment hallways" require a warrant.[36] Specifically, the Seventh Circuit posited that while Whitaker did not have "a reasonable expectation of complete privacy in the hallway" he did have a "reasonable expectation of privacy against persons in the hallway snooping into his apartment using sensitive devices not available to the general public."[37]

But *Whitaker* arrives at its conclusion by understating the import of the United

---

[34] Mot. to Suppress ¶¶ 65-72 (citing *Jardines*, 569 U.S. at 12-15 (Kagan, J., concurring)); *Kyllo v. United States*, 533 U.S. 27, 40 (2001) (finding the use of thermal imaging to constitute an unlawful search).

[35] Mot. to Suppress ¶¶ 73-76.

[36] *United States v. Whitaker*, 820 F.3d 849, 854 (7th Cir. 2016). Mr. Holmes also cites to the United States Court of Appeals for the Second Circuit's 1985 decision in *United States v. Thomas*, which found that a dog sniff outside of a defendant's dwelling constituted a Fourth Amendment search because of the defendant's "heightened expectation of privacy inside his dwelling." 757 F.2d 1359, 1367 (2d Cir. 1985). While the Second Circuit has not expressly overruled *Thomas*, it did note in a 2021 decision that its warrant requirement was the minority view when compared to its sister appellate courts. *United States v. McKenzie*, 13 F.4th 223, 232-33 (2d Cir. 2021).

[37] *Whitaker*, 820 F.3d at 853. To the extent Mr. Holmes argues he had a reasonable expectation of privacy in his complex's common hallway itself, that proposition has been rejected. *United States v. Correa*, 653 F.3d 187, 190-91 (3d Cir. 2011) ("a resident lacks an objectively reasonable expectation of privacy in the common areas of a locked, multi-unit apartment building").

States Supreme Court's decision in *Illinois v. Caballes*.[38]  In *Caballes*, the Supreme Court distinguished the use of a thermal-imaging device with the use of a canine and held the latter does not infringe on any reasonable privacy interest because "[a] dog sniff conducted during a concededly lawful traffic stop that reveals no information other than the location of a substance that no individual has any right to possess does not violate the Fourth Amendment."[39]  A thermal image on the other hand reveals far more than just illegal activity.[40]

While *Whitaker* finds *Caballes* distinguishable because *Whitaker* concerns a home and *Caballes* a car, the Seventh Circuit makes no attempt to illustrate that distinction to be meaningful, nor does *Caballes* imply any salient difference—a canine sniff from without a protected space reveals no more information than the presence of an illegal drug nearby.[41]  In turn, Mr. Holmes' invitation here to depart from long-extant federal and Delaware law must be declined.[42]

Accordingly, the use of the canine outside of Apartment 402-3C6 was not a

---

[38]  543 U.S. 405 (2005); *Whitaker*, 820 F.3d at 853.

[39]  *Caballes*, 543 U.S. at 410.

[40]  *Id.*

[41]  *See id.* ("information about perfectly lawful activity will remain private" when conducting a canine sniff).

[42]  *See, e.g., United States v. Place*, 462 U.S. 696, 707 (1983) (exposure of one's luggage to a sniff by a trained canine "did not constitute a 'search' within the meaning of the Fourth Amendment"); *Nelson v. State*, 1998 WL 171534, at *4 (Del. Mar. 30, 1998) ("performing a canine sniff test does not constitute a search within the meaning of the Fourth Amendment" (citation omitted)).

search implicating the Fourth Amendment and requiring a warrant.[43]

## 2. THE APARTMENT WARRANT APPLICATION SUFFICIENTLY ESTABLISHED PROBABLE CAUSE.

Mr. Holmes quibbles with nearly every logical connection suggested by the warrant's applicant—asserting either there was no real connection or flatly denying the supporting affidavit contained certain statements.

First, Mr. Holmes alleges that "[b]ased solely on the 'regular' visits to the apartment complex and the drug transactions, police concluded that Hammond must have a stash house there."[44]  He discounts a reasonable investigative inference— police observed Mr. Hammond selling drugs, operating a stash location on West 31st Street, and frequenting the Brandywine Hundreds Apartment Complex where Mr. Holmes, whom police knew to be a potential drug source, had been purportedly

---

[43]  *See, e.g. United States v. Winters*, 782 F.3d 289, 305 (6th Cir. 2015) (finding canine sniff does not constitute a Fourth Amendment search and stating "*Jardines* does not call *Caballes* and its progeny into doubt" (citations omitted)); *United States v. Scott*, 610 F.3d 1009, 1016 (8th Cir. 2010) (finding a canine "sniff of the apartment door frame from a common hallway did not constitute a search subject to the Fourth Amendment"); *United States v. Pierce*, 622 F.3d 209, 213 (3d Cir. 2010) (stating "an *exterior* canine sniff of a car during a lawful traffic stop does *not* amount to a 'search' under the Fourth Amendment" (emphasis in original) (citations omitted)); *United States v. Branch*, 537 F.3d 328, 335-36 (4th Cir. 2008) ("[A] dog sniff is not a search within the meaning of the Fourth Amendment, and it therefore requires no additional justification." (citations omitted)); *United States v. Jensen*, 425 F.3d 698, 706 n.2 (9th Cir. 2005) ("We also note that such use of a narcotics-detection dog does not itself constitute a search so as to implicate Fourth Amendment concerns." (citation omitted)); *United States v. Ludwig*, 10 F.3d 1523, 1527 (10th Cir. 1993) (finding "dog sniffs are not searches subject to the Fourth Amendment").

[44]  Mot. to Suppress ¶ 10.  Mr. Holmes says there was no assertion in the affidavit that the stash location was in Building 402. *Id.* ¶ 51.  But police made that determination by observing the black Dodge pickup, which they believed was owned and operated by Mr. Holmes, leave Building 402.  Apartment Search Warrant Affidavit ¶¶ 9-10.

identified. Given Mr. Hammond's known drug dealing activity, his use of a stash location, and his frequent visits to the apartment complex, police could reasonably infer the apartment complex might house his or an associate's stash location.

Second, Mr. Holmes says "[t]he affidavit does not explain how police were able to conclude that a 'specific apartment' was the supposed stash house."[45] But the affidavit lays out that police spoke with the complex's staff to discern whether they observed any suspicious activity, and when police had a lead, they employed a canine to confirm their suspicion. In other words, the affidavit explains that police were able to narrow down the stash location to a particular apartment through diligent investigation.[46]

Third, Mr. Holmes insists "[t]he warrant offers no apparent basis" for police "to surveil the apartment complex."[47] If any such basis-to-surveil were needed, the affidavit explains that police put a GPS tracker on Mr. Hammond's car which then led them to the apartment complex.

Fourth, Mr. Holmes asserts "[f]or whatever reason that the affidavit does not

---

[45] Mot. to Suppress ¶¶ 13, 59.

[46] According to Mr. Holmes, the confidential informant (or informants) who provided the police with pertinent information are unreliable and the affidavit should have identified them. Mot. to Suppress ¶¶ 50-56. While the affidavit does little to identify the reliability of the confidential informants, and thus the Court here affords the informants less weight, the information they purportedly provided was independently corroborated by identified sources in the affidavit, for instance: police surveillance, the apartment management, the GPS tracker, and security footage.

[47] *Id.* ¶ 15.

explain, police then employed a K-9 unit . . . ."[48]  But, again, the affidavit explains that police had narrowed down the stash location to Building 402, then spoke with staff who were able to help police narrow down that further to a single apartment, and finally the canine was deployed there to confirm.

The State relies on the Delaware Supreme Court's decision in *Arcuri v. State* and says because the somewhat similar affidavit at issue there[49] was found to be supported by probable cause, the affidavit here, while sparse, is sufficient to establish probable cause.[50]

While the affidavit is barer than some, as admitted by the State, it is nonetheless sufficient.

This Court, like our Supreme Court, "review[s] a magistrate's probable cause determination with great deference, considering it as a whole in a practical, commonsense manner, and not on the basis of a hypertechnical analysis of its

---

[48]  *Id.* ¶ 22.

[49]  49 A.3d 1177, 1179-80 (Del. 2012). In *Arcuri*, the Delaware Supreme Court found the challenged affidavit sufficient to support a magistrate's finding of probable cause even though "it was not as specific as it might have been;" "d[id] not include any facts explaining the conclusory statement that the [confidential source] was 'past proven reliable;'" and, "provide[d no] evidence that [the canine wa]s a properly trained, reliable, drug detection dog." *Id. State v. Saunders*, 2012 WL 6915206, at *4 n.14 (Del. Super. Ct. Dec. 28, 2012) (finding the absence of averments regarding the drug dog's pedigree and training is not fatal; the Court may properly infer such).

[50]  The State admits that the "information is on the low end when we talk about weight, veracity, credibility . . . [b]ut it is information nonetheless." March 16, 2023 Suppression Hr'g at 48.

separate allegations."[51]  "The magistrate issuing the warrant must make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit—including the veracity and the basis of knowledge of persons supplying hearsay information—there is a fair probability that contraband or evidence of a crime will be found in a particular place."[52]  For there to be that fair probability, "a nexus [must appear] between the items . . . sought and the place to be searched."[53]  Based on the facts in the affidavit here, the magistrate could conclude there was a fair probability that drugs would be found in Apartment 402-3C6.

Specifically, the affidavit established that: (1) Mr. Hammond sold drugs, (2) Mr. Hammond utilized stash locations, one of which had been seized by police, (3) Mr. Hammond frequented the Brandywine Hundreds Apartment Complex, (4) apartment staff identified a "tenant" in Building 402, Unit 402-3C6 who expedited her lease application and hadn't been seen on the property since—an indicator of stash-house behavior, and (5) the canine performed a sniff in front of Unit 402-3C6 that yielded a positive alert for drugs.[54]

---

[51] *Sisson v. State*, 903 A.2d 288, 296 (Del. 2006) (citing *Smith v. State*, 887 A.2d 470, 473 (Del. 2005)).

[52] *State v. Holden*, 60 A.3d 1110, 1114 (Del. 2013) (citing *Illinois v. Gates*, 462 U.S. 213, 237 (1983)).

[53] *Hooks v. State*, 416 A.2d 189, 203 (Del. 1980) (citations omitted).

[54] *See Saunders*, 2012 WL 6915206, at *4 ("Delaware courts have held that a drug canine 'sniff test', which positively detects the presence of drugs, provides a sufficient basis of probable cause for officers to search the identified source of the odor." (citing *Nelson*, 1998 WL 171534, at *4 and *State v. Saunders*, 2000 WL 703021, at *3 (Del. Super. Ct. Mar. 27, 2000))).

Again, the issuing magistrate could draw reasonable inferences from the factual allegations in the affidavit.[55]

"[A]ffidavits for search warrants, such as the one involved here, must be tested and interpreted by magistrates and courts in a commonsense and realistic fashion."[56] At bottom, the magistrate's finding here reflected a proper analysis of the totality of the circumstances that must be accorded proper deference.[57] Under that backdrop, the apartment search warrant affidavit no doubt contained sufficient facts on its face for the magistrate to form a reasonable belief that an offense had been committed and that contraband would be found therein.

**B. THE STORAGE-UNIT SEARCH WARRANT AFFIDAVIT CONTAINS SUFFICIENT FACTS FOR A JUDICIAL OFFICER TO FIND A FAIR PROBABILITY THAT AN OFFENSE HAD BEEN COMMITTED AND EVIDENCE THEREOF WOULD BE FOUND THEREIN.**

On March 21, 2022, officers applied for and received a search warrant to search Unit F1088—Mr. Holmes' purported storage unit at Public Storage in New Castle, Delaware.[58] The selection and search of that unit was based, in part, on what was found upon execution of the apartment search warrant. That earlier search was

---

[55] *Sisson*, 903 A.2d at 296; *see also United States v. Grimmett*, 439 F.3d 1263, 1270 (10th Cir. 2006) ("The issuing judge is entitled to go beyond the averred facts and draw upon common sense in making reasonable inferences from those facts." (citation omitted)).

[56] *United States v. Ventresca*, 380 U.S. 102, 108 (1965).

[57] *Holden*, 60 A.3d at 1114 (citing *LeGrande v. State*, 947 A.2d 1103, 1108 (Del. 2008)).

[58] D.I. 18, Ex. B ("Storage-Unit Search Warrant Affidavit").

described in Paragraph 4 of the storage-unit affidavit thusly: officers executed a search of Mr. Holmes' (previously discussed) apartment and found "226 grams crack cocaine, approximately 1,943 grams cocaine, approximately 9,871 grams (approx. 20 pounds) marijuana along with various items and paraphernalia of a large-scale drug distribution operation including a kilo press, vacuum sealer, etc and over 800 grams of cutting agent used for mixing cocaine."[59]

Police received information from an unidentified informant that Mr. Holmes utilized a storage unit at Public Storage, 3801 N. Dupont Highway, New Castle, Delaware, 19720.[60] Police obtained a list of storage-unit renters, examined that list, and found an associate of Mr. Holmes—Kiana Green—recorded as a renter.[61] Police obtained and reviewed surveillance footage of the storage facility's main office and observed Mr. Holmes arrive at the storage facility and make a cash payment to the front office.[62] Police then deployed a canine to sniff the outside of Unit F1088 resulting in a positive alert for drugs.[63] Thereafter, police obtained the storage-unit search warrant challenged here.

Mr. Holmes relies mostly on the same contentions he aims at the apartment

---

[59] *Id.* ¶ 4.

[60] *Id.* ¶ 5.

[61] *Id.* ¶ 6.

[62] *Id.* ¶ 7.

[63] *Id.* ¶ 10.

and says those same arguments apply to the latter search.[64] First, he insists the canine sniff was an unconstitutional search.[65] Next, he maintains the affidavit failed to explain how or where police obtained information about the storage unit, failed to meaningfully connect Ms. Green with Mr. Holmes, and failed to conclude with "verifiable facts" "that Mr. Holmes was a source of drugs."[66]

### 1. THE CANINE SNIFF OF THE STORAGE UNIT ALSO DID NOT CONSTITUTE A FOURTH AMENDMENT SEARCH.

Mr. Holmes incorporates his argument concerning the constitutionality of the warrantless canine sniff in the apartment complex setting to the storage-unit setting.[67] He acknowledges the United States Court of Appeals for the Second Circuit in *United States v. McKenzie* directly rejects his contention.[68] Yet, he presents no authority for why the sniff of the storage unit implicates the Fourth Amendment. He argues only that the Court should ignore the Second Circuit's *McKenzie* decision and find the sniff invalid because if a canine sniff is a "close[] call" under the federal constitution, it *must* surely be unconstitutional under the

---

[64] Mot. to Suppress ¶ 80 ("The story is much the same on the Storage-Unit Warrant. The Affidavit contained only a few relevant facts, besides another dog sniff.").

[65] *Id.* ¶¶ 86-88.

[66] *Id.* ¶¶ 80-84.

[67] *Id.* ¶¶ 80, 86.

[68] *Id.* ¶ 86 (citing 13 F.4th at 233). In *McKenzie*, the Second Circuit found "the canine sniff outside the closed door of [the storage locker] did not violate [the defendant]'s constitutional rights because it was not a search within the meaning of the Fourth Amendment." 13 F.4th at 233.

Delaware Constitution.[69]

To reiterate, the canine sniff was not a search implicating the Fourth Amendment.[70]

### 2. THE STORAGE-UNIT WARRANT APPLICATION SUFFICIENTLY ESTABLISHED PROBABLE CAUSE.

Police executed a search on an apartment associated with Mr. Holmes where they found large quantities of drugs. Police obtained the name of a particular storage facility from an unidentified informant. Examining a list of renters supplied by the facility, Police spotted a known associate of Mr. Holmes. That led police to pull the surveillance footage of the storage facility that showed Mr. Holmes at the facility paying money to the front office. And this led police to deploy a canine to Unit F1088 that yielded a positive alert for drugs.

Based on the facts in the affidavit, the magistrate found there was probable cause that drugs would be found in Storage Unit F1088. That finding reflected "a proper analysis of the totality of the circumstances" that too must be afforded deference.[71]

## V.  CONCLUSION

Both challenged search warrants were supported by probable cause.

---

[69]  *See* Mot. to Suppress ¶¶ 86-88.

[70]  *See supra* Section IV.A.1.

[71]  *Holden*, 60 A.3d at 1114 (citing *LeGrande*, 947 A.2d at 1108).

-18-

Accordingly, Mr. Holmes' Motion to Suppress is **DENIED**.

     **IT IS SO ORDERED.**

Paul R. Wallace, Judge